HARDWARE MUTUAL CASUALTY COMPANY ET AL. *v.* ALFRED N. PREMO, INSURANCE COMMISSIONER [WILLIAM R. COTTER, INSURANCE COMMISSIONER, SUBSTITUTED DEFENDANT], ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

 

Argued January 6—decided March 1, 1966

*Frank E. Callahan* and *John D. Fassett,* for the plaintiffs.

*Joseph P. Cooney,* with whom were *William K. Cole* and *Colin C. Tait,* for the defendants (The Aetna Casualty and Surety Company et al.).

*Raymond J. Cannon,* assistant attorney general, with whom, on the brief, was *Harold M. Mulvey,* attorney general, for the named defendant.

KING, C. J. No. 347 of the 1963 Public Acts, hereinafter sometimes referred to as the Act, amended §§ 38-116, 38-187 and 38-189 (e) of the General Statutes, which regulate the making of rates by insurance companies. This action was brought by the named plaintiff and nine other nonstock insurance companies. It originally sought, in the first count, a declaratory judgment determining that the sections as amended by the Act were unconstitutional, and, in the second count, that two so-called "directives", referred to as exhibits A and B, promulgated by the insurance commissioner in supervising rating plans filed pursuant to the Act, were invalid as unauthorized and unreasonable. The defendants are the insurance commissioner, hereinafter referred to as the commissioner, and three stock insurance companies writing insurance under the provisions of the statutes as amended by the Act. Notice to every insurance company regulated by the commissioner under the Act was given pursuant to Practice Book § 309 (d). See *Hardware Mutual Casualty Co.* v. *Premo,* 25 Conn. Sup. 309, 317, 203 A.2d 433.

Section 38-116 of the General Statutes, which is the section amended by § 1 of the Act, forms part of chapter 679, which embraces the statutory provisions for the regulation of rates for fire, marine and inland marine insurance.

Sections 38-187 and 38-189 (e) of the General Statutes, which are respectively amended by §§ 2 and 3 of the Act, form part of chapter 682, which embraces the statutory provisions for the regulation of rates for certain casualty insurance including bonds and motor vehicle insurance.

The plaintiffs, in their attack on the Act, draw no real distinction between the amendments to the two different chapters, and for the sake of brevity we

confine our discussion to the amendments to chapter 682 (§§ 2 and 3 of the Act), although it should not be overlooked that there are differences in the two chapters in the rate regulatory procedure provided in the amended sections. Chapters 679 and 682, except as modified by the Act, were largely derived from chapters 219 and 221, respectively, of the 1947 Cumulative Supplement to the General Statutes (Rev. 1949, c. 294, c. 297), which formed part of the "All-Industry" legislation adopted in 1947. See *Employers Mutual Liability Ins. Co.* v. *Premo,* 152 Conn. 610, 613, 211 A.2d 154. That case, like the present, involved a controversy between non-stock and stock insurance companies. In the opinion in that case, the general background of the making of rates is touched upon, beginning on page 612.

It is also important to note that in this case the plaintiffs' claim of unconstitutionality is restricted to the sections of the statutes as amended by the Act. In other words, there is no claim of unconstitutionality of any one of the sections as it stood prior to, or except as amended by, the Act.

To facilitate an understanding of the plaintiffs' claims, it is virtually essential to have at hand the sections of the affected statutes discussed in this opinion, both immediately prior, and immediately subsequent, to the effective date of the Act, which was May 29, 1963. For this reason, §§ 2, 3 and 4 of the Act are set out in the footnote, the italicized words being those which the Act added to §§ 38-187 and 38-189 (e) and the bracketed words being those which the Act deleted from those sections.[1]

---

[1] "PUBLIC ACT NO. 347. AN ACT CONCERNING THE ESTABLISHMENT OF RATES OF INSURANCE PURCHASED BY THE STATE.

". . . SEC. 2. Section 38-187 of the general statutes is repealed and the following is substituted in lieu thereof: (a) All rates

## I

The plaintiffs' claim of unconstitutionality, raised in the first count, is based on four main grounds. Before examining these grounds certain basic principles governing our decision should be borne in mind. In the first place, because of the fundamental separation of powers, legislation cannot be stricken down by the courts on the ground of unconstitutionality unless its invalidity on that ground is proven beyond a reasonable doubt. *Patterson* v. *Dempsey,* 152 Conn. 431, 444, 207 A.2d 739, and cases cited. A corollary of this principle is the rule that no one has standing to attack the constitutionality of a statute unless he alleges facts which, if proven, would establish that, in its impact upon him, the legislation attacked adversely affects his

shall be made in accordance with the following provisions: (1) Due consideration shall be given to past and prospective loss experience within and outside this state, to catastrophe hazards, if any, to a reasonable margin for underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers, to past and prospective expenses both countrywide and those especially applicable to this state, and to all other relevant factors within and outside this state; (2) the systems of expense provisions included in the rates for use by any insurer or group of insurers may differ from those of other insurers or groups of insurers to reflect the requirements of the operating methods of any such insurer or group with respect to any kind of insurance, or with respect to any subdivision or combination thereof for which subdivision or combination separate expense provisions are applicable; (3) risks may be grouped by classifications for the establishment of rates and minimum premiums; classification rates may be modified to produce rates for individual risks in accordance with rating plans which [establish standards for measuring] *provide for recognition of* variations in hazards or *in* expense [provisions] *requirements,* or both; such [standards] *rating plans may include application of the judgment of the insurer and* may measure any differences among risks that can be demonstrated to have a probable effect upon losses or expenses; (4) rates shall not be excessive, inadequate

constitutionally protected rights. *Coyle* v. *Housing Authority,* 151 Conn. 421, 424, 198 A.2d 709; *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 718, 184 A.2d 42. And aside from the mere question of standing, if his attack is to be successful, a plaintiff must sustain the burden of proving the facts essential to his standing, that is, that the effect or impact of the challenged statute on him adversely affects a constitutionally protected right which he has. This means a right which he proves that he has under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist. *Karen* v. *East Haddam,* 146 Conn. 720, 727, 155 A.2d 921; *State* v. *Sul,* 146 Conn. 78, 81, 147 A.2d 686, and cases cited. Of course the fact that the plaintiffs originally chose to seek a declara-

---

or unfairly discriminatory; *(5) each rating plan shall establish appropriate eligibility criteria for determining significant risks which are to qualify under the plan and such plans shall be subject at all times to the approval of the insurance commissioner; provided all such plans shall include as an eligible significant risk the state of Connecticut or its instrumentalities. Rating plans which comply with the provisions of this subdivision shall be deemed to produce rates which are not unfairly discriminatory;* (b) except to the extent necessary to meet the provisions of [subdivision] *subdivisions* (4) *and (5)* of subsection (a) of this section, uniformity among insurers in any matters within the scope of this section is neither required nor prohibited.

"SEC. 3. Subsection (e) of section 38-189 of the general statutes is repealed and the following is substituted in lieu thereof: No manual of classifications, rules, rating plan, or any modification of any of the foregoing, which [establishes standards for measuring variations in hazards or expense provisions, or both, and which] has been filed pursuant to the requirements of section 38-188, shall be disapproved if the rates thereby produced meet the requirements of this chapter.

"SEC. 4. This act shall take effect from its passage and rates established hereunder shall apply to any state insurance purchased on or after October 1, 1963."

tory judgment in nowise changes or relieves them from the burden of proof resting on them. *Holt v. Wissinger,* 145 Conn. 106, 109, 139 A.2d 353. The procedure finally followed is somewhat unusual, however, in that, instead of a direct stipulation as to the operative facts, the parties stipulated for a reservation of the case to this court on an agreed statement of facts, and in lieu of the declaratory judgment and ancillary injunctive relief originally claimed by the plaintiffs, the parties propounded eight questions as to which answers are sought. These questions are set out in the footnote.[2] The procedure finally adopted was apparently patterned on that customarily followed in will construction

---

[2] "1.  Do plaintiffs have standing to contest the constitutionality of Public Act 347?

"2.  Does Public Act 347 violate Article I, Sections 1 and 12 of the Connecticut Constitution or the Fourteenth Amendment to the Constitution of the United States for the reasons alleged in paragraph 12 of the First Count of the Substituted Complaint?

"3.  Does Public Act 347 violate Article III, Section 1 of the Connecticut Constitution or the Fourteenth Amendment to the Constitution of the United States for the reasons alleged in paragraph 13 of the First Count of the Substituted Complaint?

"4.  Does Public Act 347 violate Article III, Section 1 of the Connecticut Constitution or the Fourteenth Amendment to the Constitution of the United States for the reasons alleged in paragraph 14 of the First Count of the Substituted Complaint?

"5.  Does Public Act 347 violate Article I, Sections 1 and 12 of the Connecticut Constitution and the Fourteenth Amendment to the United States Constitution for the reasons alleged in paragraph 15 of the First Count of the Substituted Complaint?

"6.  Are the plaintiffs precluded from maintaining the cause of action alleged in the Second Count of the Substituted Complaint without first seeking redress from the Insurance Commissioner as alleged by defendants in the Second Special Defense to the Second Count of the Substituted Complaint?

"7.  Did the insurance commissioner have the authority to issue Exhibits A and B?

"8.  Does the Second Count allege a case or controversy entitling the plaintiffs to a declaratory judgment?"

suits. See Practice Book §§ 738 and 739 and Form No. 614, p. 759. But whatever reason the parties may have had for changing over to the reservation procedure finally adopted, it in nowise affected the burden of proof resting on these plaintiffs. This burden flows from the inherent nature of an attack made on the constitutionality of a legislative enactment, and it cannot be ameliorated or avoided by any procedural maneuver.

## II

Question 1 asks whether the plaintiffs have standing to contest the constitutionality of the Act. Question 8 asks whether the second count alleges facts adequate to entitle the plaintiffs to a declaratory judgment on that count. The defendants maintain that the plaintiffs have shown no standing at all to pursue either count of this action, and this claim presents a question of some difficulty, especially under the reservation form which this proceeding finally assumed. On the other hand, all the parties stipulated that the questions raised should be promptly settled because they are in the public interest and are of major importance with respect to the regulation of insurance rates.

Faced with this situation, we have decided to consider the questions as to the constitutionality of the Act raised by the plaintiffs' attack upon it and the questions as to the validity of the "directives" referred to in the second count. But in so doing we find it unnecessary to determine whether the plaintiffs have established their standing to maintain this action as to either count of the complaint, and consequently we do not answer questions 1 or 8. This is because, as hereinafter set forth, the plaintiffs have failed to sustain their burden of proof

on the merits as to either count of the complaint, and thus the question of standing, as such, becomes academic.

## III

The first claim of unconstitutionality is raised in question 2 and is that the Act contains phrases so vague as to be meaningless. In their brief, the plaintiffs specify three such phrases: "provide for recognition," "appropriate eligibility criteria" and "significant risks."

A basic change wrought by the Act was the clarification of the amended sections to remove any doubt that, subject, of course, to the commissioner's power of approval or disapproval of a filing, underwriting judgment might be used to determine to what extent variations in expense provisions (cost of acquisition, such as advertising and agency commissions, and cost of servicing and supervising the risk) and variations in hazards may properly affect the expenses or losses of a given risk and, in turn, the premium cost to the insured, provided that the rate produced otherwise conformed to the statutory requirements, including the primary standards that the rate must not be "excessive, inadequate or unfairly discriminatory." General Statutes § 38-187 (a) (4).

Under § 1-1 of the General Statutes, in the construction of statutes, "words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases . . . shall be construed and understood accordingly." While the quoted statutory rule of construction includes technical legal terms, it also includes technical terms associated with the trade or business with which a given statute is concerned.

Here that trade or business is insurance. Thus the terms in question should be accorded the meaning which they would convey to an informed person in the insurance trade or business. *Order of Railway Conductors* v. *Swan,* 329 U.S. 520, 525, 67 S. Ct. 405, 91 L. Ed. 471; 50 Am. Jur. 265, Statutes, § 277.

As far as appears, the three phrases in question are technical phrases in the field of insurance and understood by the commissioner and others involved in that business. While the plaintiffs claim that the quoted words are ambiguous if not meaningless, there is nothing in the stipulated facts supporting or justifying that claim. More important, there are no facts showing that such terms are unknown, ambiguous, or meaningless to informed persons engaged in the insurance business. See *Order of Railway Conductors* v. *Swan,* supra.

Certainly it would be impermissible for this court to strike down as unconstitutional a legislative enactment merely because it contained technical words the exact meaning of which was not evident, without explanation, to the members of this court or, for that matter, to other persons disassociated from the technical field in connection with which the terms were used.

The ground of unconstitutionality raised in question 2 was not proven.

For convenience, we consider together both questions 3 and 4 as more particularly stated in paragraphs 13 and 14 of the substituted complaint. These questions in effect present a claim of unconstitutionality on the ground that the Act provides for an illegal delegation of legislative power by the General Assembly to the insurance commissioner (question 3) and to private insurance com-

panies or groups of insurance companies (question 4).

General Statutes § 38-187 (a) (4) provides, inter alia, that "rates shall not be excessive, inadequate or unfairly discriminatory." The plaintiffs agree that the quoted language, in conjunction with the other statutory requirements, provides adequate primary standards for the making of rates.

The title of the Act indicates that it was concerned with the making of rates of insurance purchased by the state. It did that by providing that a "significant risk" must include the state. The plaintiffs, as we understand their brief, make no claim that the General Assembly could not, without violation of any state or federal constitutional provision, exempt purchases of insurance by the state from the regulatory provisions of chapters 679 and 682 of the General Statutes.

Their complaint is, in essence, that the Act amended rate regulatory procedures as to insureds other than the state and in so doing provided that the methods by which rates are established for a class of risks may be modified for individual risks within the class to reflect differences in hazards and in expense requirements which are peculiar to the individual risks and are not shared by the class as a whole. From this they claim that standards were not provided which were adequate to meet the requirements of the fourteenth amendment to the constitution of the United States or the requirements of article third, § 1, of the constitution of Connecticut. This claim seems to be made under the rule of cases such as *State* v. *Stoddard,* 126 Conn. 623, 627, 13 A.2d 586, and *Roan* v. *Connecticut Industrial Building Commission,* 150 Conn. 333, 340, 189 A.2d 399.

The effect of the Act is to permit the filing of a rating plan in which the individual insurer's judgment as to the expense provisions of a particular risk, or the probable hazards of a particular risk, may reflect the expected cost to the insurer of providing the coverage for that risk and, in turn, the amount of premium to be charged the insured. The plaintiffs claim this opens the door to what amounts to rebating, which is prohibited by General Statutes § 38-59, in that it permits the insurer's judgment to play a greater part than formerly in the making of a rate, and that the criteria on which such judgment is based are so lacking in specificity that they cannot be checked, by the commissioner or anyone else, against the applicable, above-quoted, primary standards and the other requirements of the statutes in question. Judgment has always played a part in rate making, especially where experience is lacking as in the case of a new type of risk. This the plaintiffs concede in the stipulated facts. Indeed, prior to the Act, judgment was to some extent authorized in rates regulated under chapter 679 by § 38-117 (a) (1), (2), (3) and (4) and in rates regulated under chapter 682 by § 38-188 (a) (1), (2), (3) and (4).

It is obvious that it is simpler for the commissioner to approve or disapprove a rate filing under the formula type of standards contended for by the plaintiffs than under the type of standards authorized in the Act, wherein the insurer's judgment may play a greater part.

The making of rates, however, is a complex matter in which judgment cannot be wholly eliminated. Our statutes, at least since 1947, have provided that uniformity in rates among insurers is "neither required nor prohibited." General Statutes §§ 38-116 (b), 38-187 (b). And it has never been

claimed that large risks should always be charged at the same premium rate as small ones. See, for instance, prior provisions as to premium discount and retrospective rating as outlined in *Employers Mutual Liability Ins. Co.* v. *Premo,* 152 Conn. 610, 615, 211 A.2d 154. The statutory provisions as to rate making must be followed, and the rate produced must meet the applicable statutory requirements, including the primary standards that it be not excessive, inadequate or unfairly discriminatory. Neither the commissioner nor a rating bureau nor an individual insurance company can waive or disregard the requirements of the Act. The court cannot strike down the Act as unconstitutional merely because the amendments made by the Act may make supervision of rate making by the commissioner somewhat more difficult. Nor have the plaintiffs sustained their burden of proving that the requirements of the Act, including the primary standards, as to rates are so inadequate a guide to the commissioner that the Act must fall as an unconstitutional delegation of legislative power.

In other words, we cannot find that the plaintiffs have sustained their burden of proving that the Act is unconstitutional as illegally delegating inadequately restricted power to the rating bureau, to the commissioner, or to insurers.

It follows that questions 3 and 4 should be answered "No."

The plaintiffs, in question 5, base their attack on the so-called "deemer clause" inserted in § 38-187 (a) (5), which provides that "[r]ating plans which comply with the provisions of this subdivision shall be deemed to produce rates which are not unfairly discriminatory." It should be noted

that the reference is to a rating plan rather than to a particular rate. It is true that in Connecticut a rating plan becomes operative, if it is not disapproved by the commissioner within thirty days before its effective date, unless the commissioner gives written notice that he requires more time to consider the data supporting the rating plan. Public Acts 1963, No. 5 (General Statutes § 38-188 [d]). But the commissioner may, even after a rating plan has become effective, at any time, on notice and hearing, disapprove it if he finds it fails to conform to the requirements of the statute. General Statutes § 38-189 (c), (d). These requirements would include, of course, the basic requirement that the rating plan not be excessive, inadequate or unfairly discriminatory.

In the light of all this, it is clear that the "deemer clause," previously quoted, does not, as the plaintiffs claim, create a conclusive presumption stripping the commissioner and the courts of all substantial control over rates. It obviously must be construed in the light of the other provisions of the Act, including those already mentioned. So construed, it is clear that the provision exhausts itself in providing that in the absence of substantial evidence to the contrary, or adverse action by the commissioner, a proposed rating plan will be deemed not to be unfairly discriminatory. But if, either before or after its effective date, substantial evidence that it is unfairly discriminatory is presented to the commissioner, or the commissioner himself so determines on his own knowledge or from investigation made by him, then the presumption loses all force, and the burden of proving that the rating plan is not excessive, inadequate or unfairly discriminatory is on the proponent of the plan. So

construed, we find no constitutional infirmity in the "deemer clause." The construction we have adopted appears in harmony with a similar clause as used in §§ 38-117 (e) and 38-188 (e).

It is probably true that maladministration of the statute by the commissioner, in disregard of the statutory requirements including the foregoing primary standards, might conceivably constitute action which would have an unconstitutional impact on a particular insured or on one or more individual insurance companies. But that is not this case. The plaintiffs have wholly failed to prove any such impact on themselves. This court cannot strike down a legislative enactment as unconstitutional merely because difficulties may be encountered in its administration, or on the mere possibility that it may be improperly administered. *Lyman* v. *Adorno,* 133 Conn. 511, 530, 52 A.2d 702. And as already noted, the plaintiffs cannot succeed in their attack even though in some conceivable hypothetical situation not presented to the court, the statute might possibly have an unconstitutional impact on someone. *State* v. *Sul,* 146 Conn. 78, 81, 147 A.2d 686. This is true even without regard to the rights of appeal to the commissioner and to the court accorded in §§ 38-192, 38-193 and 38-201 of the General Statutes. *Employers Mutual Liability Ins. Co.* v. *Premo,* 152 Conn. 610, 617, 211 A.2d 154.

Even if we assume, without deciding, the adequacy of the pleadings to show the plaintiffs' standing, the plaintiffs have failed to prove beyond a reasonable doubt that the Act is unconstitutional on any of the four basic grounds raised in the first count of the complaint or that in any respect it has had an unconstitutional impact upon them.

Question 5 should be answered "No."

## IV

In the second count the plaintiffs claim that the "directives" issued by the commissioner, which we will refer to as exhibits A and B, are illegal. This is quite apart from their claim that the Act is unconstitutional, since they claim that the directives are invalid because they are not reasonable and therefore are unauthorized by §§ 38-126 (d) and 38-197 (d), which empower the commissioner to "make reasonable regulations necessary to effect the purposes" of chapters 679 and 682 of the General Statutes.

Exhibit A was sent out to insurers by the commissioner with an accompanying letter dated June 27, 1963. At some time prior to September 24, 1963, exhibit B, with an accompanying notice, was sent out to rating bureaus and insurers which might file rating plans. Clearly, exhibit B, in terms, superseded exhibit A. The plaintiffs have failed to prove that they were adversely affected by exhibit A during its short life, and consequently we find no occasion to discuss it.

Exhibit B was entitled "Minimum Annual Eligibility Criteria for Determining Significant Risks under Public Act 347." It was accompanied by a letter stating that the exhibit was a revision of exhibit A and indicated "the minimum premium levels by line of insurance which this [insurance] department feels it can accept as eligibility criteria in rating plans permitted by Public Act No. 347." The letter further stated: "We wish to emphasize that this information is intended to be by way of preliminary guide lines to filers and does not constitute prejudgment of any plan that may be filed with this department."

It is clear from the quoted paragraph that the commissioner was disclosing his then tentative views as to the limits of variations in rates which should be permitted under the provisions of the Act. It was obviously of no binding force on anyone. If a proposed filing complied with the provisions of exhibit B, the filing, if otherwise in order, would probably be accepted and approved. Even if it did not comply, it might still be approved.

But if the filing was rejected, whether because it did not comply with the suggested terms of exhibit B or for any other reason, a right of appeal was provided as hereinbefore pointed out. *Employers Mutual Liability Ins. Co.* v. *Premo,* supra, 616. As far as appears, on appeal to, and hearing before, the commissioner, he might be persuaded to change his tentative views, as set forth in exhibit B, and to approve the filing. It is clear that exhibit B is not a "directive" or a binding administrative ruling in any aspect. It was a commendable disclosure by the commissioner, for the assistance of filers, of his initial tentative views as to the proper interpretation of the new Act.

Quite apart from the question of exhaustion of administrative remedies, as posed in question 6, the plaintiffs have not proven that these interpretative suggestions are binding on anyone. Regardless of the reasonableness of the commissioners' classification of a significant risk, in the various types of insurance coverage, as tentatively indicated by exhibit B, the fact remains that the commissioner has promulgated no fixed classification of any kind. The plaintiffs have made filings which conform to exhibit B, and these have not been disapproved. The plaintiffs claim, however, that these filings were made "solely as defensive measures to allow non-

stock companies to compete with other insurers on whose behalf similar rating plans had been filed and approved." Even if this argument be accepted, it cannot alter the fact that exhibit B has not been proven to be a directive or administrative ruling which is binding on anyone. From this it necessarily follows that it cannot be stricken as an unreasonable or illegal regulation. It could harm no one. Obviously the commissioner was quite within his rights in issuing it.

The plaintiffs have failed in their burden of proof under the second count, and it becomes unnecessary to answer question 6.

## V

Questions 2, 3, 4 and 5 in the reservation are answered "No"; question 7 is answered "Yes"; questions 1, 6 and 8 need not be, and are not, answered.

Costs shall be taxed as on a declaratory judgment action in favor of the prevailing parties.

In this opinion the other judges concurred.