UTICA MUTUAL INSURANCE COMPANY ET AL. *v.* WILLIAM R. COTTER, INSURANCE COMMISSIONER, ET AL.

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 145454

Memorandum filed June 7, 1966

*Wiggin & Dana,* of New Haven, for the plaintiffs.

*Harold M. Mulvey,* attorney general, *Raymond J. Cannon* and *Stephen J. O'Neill,* assistant attorneys general, for the named defendant.

*Cooney & Scully,* of Hartford, for all other defendants.

PARSKEY, J.  This is an appeal by nonstock insurance companies from a decision of the insurance commissioner approving a so-called "wrap-up" plan for workmen's compensation insurance and ordering the National Council on Compensation Insurance, hereinafter referred to as National Council, to make the proposed addition to its filings on behalf of its members and subscribers.

The wrap-up proposal which is the subject of this proceeding would permit two or more legal entities engaged in a construction, erection or demolition project to be combined for the purpose of premium discount and retrospective rating, subject to the following conditions:  (1)  Entities shall be limited to owner, principal and general contractor and subcontractors performing work under a contract let on an ex-insurance basis; (2) estimated total standard premium with respect to project

work to be done by entities which are to be combined is $250,000 or more; (3) the project is confined to operations at a single location; (4) the project is of definite duration, involving work to be performed continuously to completion. This proposal failed of approval at the National Council owing to a tie vote, the stock companies voting in favor, the nonstock companies against. The stock companies appealed to the insurance commissioner under § 38-192 of the General Statutes.

The insurance commissioner, after a hearing, approved the proposed wrap-up plan as an addition to the filings of the National Council. He found both from the evidence adduced at the hearing and from the records and experience of his office that the wrap-up plan results in substantial savings in insurance costs; that wrap-up plans have saved the federal government millions of dollars; that the proposal would not be unfairly discriminatory, since it will be available to all projects which meet the eligibility criteria; that the eligibility point of $250,000 estimated premium is reasonable in that projects involving a premium of this nature are of such size and magnitude that there is a demonstrated opportunity to achieve the advantages inherent in the wrap-up program; and that it is in the public interest that there be a rating program available for large construction projects. He further found that the action of the nonstock companies in refusing to approve the proposal was unreasonable in that it was based on longstanding opposition to the entire theory of a wrap-up, on a refusal to recognize its obvious advantages, and primarily on competitive considerations.

Plaintiffs make a number of claims: (1) The proposal constitutes a "change in" National Council filings within the meaning of § 38-192 of the Gen-

eral Statutes; (2) the proposal is invalid for failure
to include the state of Connecticut and its instru-
mentalities as required by § 2 of Public Act No. 347
of the 1963 General Assembly (General Statutes
§ 38-187 [a] [5]); (3) the proposal provides for
rates which are unfairly discriminatory; (4) the
decision of the National Council was not unreason-
able.

## I

Plaintiffs' contention that the wrap-up proposal
constitutes a change in filings is without merit. The
rating formulas for both premium discount and
retrospective rating remain the same. Nothing is
deleted, nothing is altered, nothing is substituted.
The plan applies existing rating schedules to a new
combination of entities. Unless all additions are to
be construed as constituting changes in filings, the
present proposal, which adds a new category to
the definition of "insured" in the basic manual, is
subject to the compulsory powers of the insurance
commissioner under § 38-192 of the General Statutes.

## II

Any discussion of the impact of No. 347 of the
1963 Public Acts which ignores the political history
of the 1963 General Assembly misses valuable back-
ground information. It is a matter of common
knowledge that the practice utilized by the state for
the purchase of its insurance was the subject of
intensive legislative investigation. Of particular
interest was the manner in which agents of record
over a course of years distributed commissions to
subagents as a means of political patronage. It was
patent that this practice cost the state substantial
sums of money which might otherwise be saved.
It was in this political and historical context that
Nos. 347 and 348 of the 1963 Public Acts were

passed, the former (General Statutes §§ 38-116, 38-187, 38-189 [e]) designating the state as an eligible significant risk so as to make available to the state any savings from special rating programs, the latter (as amended, General Statutes §§ 4-37a— 4-37c) establishing a new procedure for the selection of the agent of record so as to remove the selection procedure from partisan politics, eliminate the use of subagents and its attendant political patronage, and at the same time give the state the economic benefits of reduced agents' commissions. "We cannot as judges be ignorant of that which is common knowledge to all men." *Sherrer* v. *Sherrer*, 334 U.S. 343, 366. Reading Public Act No. 347 in the light of this history leads to the conclusion that the emphasis of this act is on making the state eligible for any and all rating programs by operation of law rather than on making the inclusion of the state a condition precedent to the approval of a given rating program. Thus, the failure of the wrap-up program to include the state does not render it invalid.

### III

From the evidence adduced at the hearing before the commissioner, it appears that the wrap-up proposal has many advantages: Claims are promptly reported to a central location for immediate attention; the amount of expense dollars available makes it possible to establish superior medical and first-aid facilities for all employees, regardless of employer; a single carrier can establish and carefully follow through on a sound loss-control program; the unified safety control should prevent accidents and the costly holdups in the progress of the job caused by accidents; it will eliminate considerable paper work and effort on the part of the principal, as well as holding forth the prospect of sub-

stantial savings in insurance cost; since industrial accidents often involve members of the public as well as employees, the public will also benefit to the extent that accidents are prevented; subcontractors would benefit from the concentration of safety factors, both with respect to completion of their portion of the job and their future experience rating modifications. The plaintiffs assert, however, that all of these stated advantages are irrelevant since in their opinion the plan as presented is unfairly discriminatory. In this respect, it is their claim that the eligibility criterion of $250,000 is arbitrary and unreasonable, that the proposal is optional in its application by its express terms, and that there is no logical relationship between the discounts that would result from wrapping up and savings to the insurer.

Plaintiffs' claim with respect to the $250,000 eligibility criterion is in reality a blanket objection to classification as such. The purport of the present wrap-up plan is to give special treatment to large risks. The reasoning behind this is that a substantial number of expense dollars must be available in order to provide the special type of service contemplated in a wrap-up program. The figure $250,000 was selected as a matter of judgment on the basis that at that point the expense dollars were sufficient. "The making of rates . . . is a complex matter in which judgment cannot be wholly eliminated. Our statutes, at least since 1947, have provided that uniformity in rates among insurers is 'neither required nor prohibited.' General Statutes §§ 38-116 (b), 38-187 (b). And it has never been claimed that large risks should always be charged at the same premium rate as small ones." *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 477. The plaintiffs do not question that any project calling for a $250,000 premium entails a large risk.

They suggest, however, that a lower figure such as $200,000 could also involve a large risk. It may well be that later experience might justify a reduction in the premium level for the purposes of a wrap-up, but unless the figure selected is clearly unreasonable the court cannot substitute its judgment for that of the commissioner.

The plaintiffs' position with respect to the claimed optional feature of the wrap-up is not well taken. The plaintiffs point to no language in the plan itself which gives the option to the insurer. Instead, they point to other language in the rules contained in the basic manual and claim that under these rules it is optional with the insurer whether any combination of entities will be recognized for premium discount or retrospective rating purposes. At present, entities having a common ownership and entities engaged in a joint venture are permitted to wrap up for the purpose of premium discount and retrospective rating. Not even the plaintiffs suggest that in these situations the benefits of wrap-up accrue to the insured only at the option of the insurer. The only option the insurer has is whether to write the risk at all. The same principle applies to the present proposal.

Plaintiffs' claim that a relationship must be shown between the amount of discount and the savings in costs to the insurer is equally without merit. There is no such requirement. A rational basis must be shown for the classification, and the rating plan itself must not be unfairly discriminatory. If a relationship is shown between the amount of discount and savings in cost, this would tend to establish the reasonableness of the classification. It does not follow, however, that a plan not otherwise unfairly discriminatory will not pass muster in the absence of a showing of such relationship.

## IV

Once the commissioner determined, with justification, that the proposed wrap-up plan was in the public interest, that the eligibility criteria were reasonable, and that the plan was not unfairly discriminatory, the only remaining justification for the opposition of the nonstock companies was competition. Competitive considerations do not afford a reasonable basis for rejecting a rating plan. In *Employers Mutual Liability Ins. Co.* v. *Premo,* 152 Conn. 610, the Supreme Court said (p. 623): "If such a wrap-up procedure is sound and valid, it is unlikely that the nonstock insurance companies could long deprive the public of its benefits, even if we were to assume that they would attempt so to do." It is the judgment of the insurance commissioner that the public should not be denied the benefits of the proposed wrap-up plan, which he has found to be sound and valid. This court, upon review, cannot conclude that he was wrong.

Judgment may enter dismissing the plaintiffs' appeal and denying the plaintiffs' motion for stay of the insurance commissioner's order in the premises.