# SHORELINE SHELLFISH, LLC
## *v.* TOWN OF BRANFORD
### (SC 20392)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiffs sought damages from the defendant, the town of Branford,
for, inter alia, breach of contract in connection with the plaintiffs' unsuc-
cessful attempt to lease a shellfishing ground in Branford known as lot
511. The plaintiffs had entered into an agreement with the town's Shell-
fish Commission under which the plaintiffs agreed to share information
with the commission about potential shellfishing grounds in exchange
for the right of first refusal to lease lot 511. Thereafter, when one of
the plaintiffs' competitors applied to lease lot 511, the plaintiffs exercised
their right of first refusal, but the commission leased the lot to the
plaintiffs' competitor. The town moved for summary judgment on the
ground that the right of first refusal was not a valid or enforceable
contract because the commission lacked the authority to enter into an
agreement in view of the provision of the Branford Town Code (§ 88-

---

(internal quotation marks omitted)). Even if we were to assume that plain
error review remains available to the defendant as a procedural matter,
however, we would decline to invoke it under the facts of this particular
case. The plain error doctrine is an "extraordinary remedy used by appellate
courts to rectify errors committed at trial that, although unpreserved, are
of such monumental proportion that they threaten to erode our system of
justice and work a serious and manifest injustice on the aggrieved party.
. . . [I]t is a doctrine that this court invokes in order to rectify a trial court
ruling that, although either not properly preserved or never raised at all in
the trial court, nonetheless requires reversal of the trial court's judgment,
for reasons of policy." (Internal quotation marks omitted.) *State* v. *Myers*,
290 Conn. 278, 289, 963 A.2d 11 (2009). Because the defendant's own account
of the events on the night in question indicates that he did not use force
against the victim in an attempt to regain his mother's keys, we can perceive
of no manifest injustice in the trial court's failure to instruct the jury with
respect to defense of personal property in connection with the assault
charge.

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

Shoreline Shellfish, LLC *v.* Branford

8) providing that no lease of shellfishing grounds "owned by" the town shall be permitted without the approval of the town's Board of Selectmen. The trial court granted the town's motion, concluding, inter alia, that, pursuant to § 88-8 of the town code, the Board of Selectmen, and not the commission, had the authority to approve any lease of shellfishing grounds located in Branford and that there was no evidence that the Board of Selectmen had approved the agreement between the plaintiffs and the commission. On appeal, the plaintiffs claimed, inter alia, that a genuine issue of material fact existed as to who owned lot 511, which affected whether the Board of Selectmen was required to approve the lease under § 88-8 of the town code. The plaintiffs contended that the phrase "owned by" in § 88-8 limited the authority of the Board of Selectmen to lease shellfishing grounds to only those grounds owned by the town and that the town presented no evidence regarding whether it owned lot 511. *Held* that the trial court improperly granted the town's motion for summary judgment, as there was a genuine issue of material fact as to whether the town "owned" lot 511 and, thus, whether the commission had the authority to lease lot 511 to the plaintiffs under § 88-8 of the town code: under the particular, technical definition of the phrase "owned by" in § 88-8, as established by case law concerning the public trust doctrine, the town owned lot 511 only if it held title to a grant of the private rights to the lot, and the town, having advanced no evidence that it had been granted private rights to lot 511, did not meet its burden of establishing that it owned lot 511 within the meaning of § 88-8 of the town code; moreover, the town's assertion that the phrase, "shellfishing grounds owned by Branford," in § 88-8 must refer to all shellfishing grounds for which the town controlled the proprietary rights to cultivate and harvest shellfish was unreasonable because to interpret "own" to mean "control" was contrary to its plain meaning, both under its dictionary definition and this court's case law discussing the particular meaning of the word in the context of the public trust doctrine, as the phrase to "own" shellfishing grounds means to hold legal title to the private rights to those grounds.

Argued February 25—officially released July 29, 2020**

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Blue, J.*, granted the plaintiff's motion to add Shellfish Partners, Ltd., as a plaintiff; thereafter, the court, *Abrams, J.*, granted the defendant's motion for

** July 29, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Shoreline Shellfish, LLC *v.* Branford

summary judgment and rendered judgment thereon, from which the plaintiffs appealed. *Reversed*; *further proceedings*.

*Richard W. Callahan*, for the appellants (plaintiffs).

*Michael T. Cretella*, for the appellee (defendant).

*Opinion*

D'AURIA, J. Given the geography of our state, which is bounded on the south by the Long Island Sound, shellfishing has a long and rich history in Connecticut. The first Connecticut laws regulating the taking of shellfish were created before the revolution, in the early eighteenth century. Connecticut State Register and Manual (2019) p. 825. By the late nineteenth century, oyster farming was a major contributor to the state's economy. Id. For a time, Connecticut had the largest fleet of oyster steamers in the world. Id. Beginning in the mid-nineteenth century, water pollution, disease, overharvesting, and other factors decimated historically abundant shellfish populations, but cleaner water and better management practices contributed to a rebounding shellfish population in recent years. The Nature Conservancy, "Private Shellfish Grounds in Connecticut: An Assessment of Law, Policy, Practice and Spatial Data" (January, 2010) p. 6. The shellfishing industry in Connecticut, too, has begun to rebound; today, the industry makes more than $30 million in annual sales.[1]

The waters of the Sound are both a natural and an economic resource of the state, guarded jealously. Predictably, control over the shellfish industry is also guarded jealously and has long been subject to state and local legislation, including state legislation unique to a particular town in the present case, the defendant,

[1] Connecticut Department of Agriculture, Shellfish Industry Profile and Economic Impact, available at https://portal.ct.gov/DOAG/Aquaculture1/ Aquaculture/Connecticut-Shellfish-Industry-Profile (last visited July 29, 2020).

Shoreline Shellfish, LLC *v.* Branford

the town of Branford. In this appeal, we are asked to resolve a dispute that has arisen not just between a local business and the town, but among that town's governing entities. At its core, this case involves a dispute over who has authority to lease shellfishing beds on the town's behalf, Branford's Shellfish Commission (commission) or its Board of Selectmen (selectmen).

The plaintiffs, Shellfish Partners, Ltd., and its general partner, Shoreline Shellfish, LLC, which had been granted the right of first refusal by the commission to lease certain shellfishing grounds located in Branford, appeal from the trial court's decision to render summary judgment in favor of the defendant on the ground that there was no genuine issue of material fact that the selectmen, and not the commission, had authority to bind the defendant to agreements relating to the leasing of shellfishing grounds pursuant to General Statutes § 26-266[2] and chapter 88 of the Branford Town Code (code). Specifically, the plaintiffs claim that the trial court improperly interpreted § 26-266 (a), which gives charge of shellfishing grounds to "[t]he selectmen . . . or shellfish commission," to grant both the commission and the selectmen authority to lease shellfishing grounds within the town, and, therefore, that the ordinance, § 88-8 of the code, which splits authority between the commission and the selectmen, is invalid on this basis. In the alternative, the plaintiffs claim that, even if the trial court properly interpreted § 26-266 and the ordinance as granting authority to both the commission and the selectmen, the trial court improperly interpreted the meaning of the phrase "owned by" in the ordinance, and, thus, there is a genuine issue of material fact as to whether the defendant owned the shellfishing ground

---

[2] General Statutes § 26-266 (a) provides in relevant part: "The selectmen of the town of Branford or shellfish commission established in accordance with section 26-257a shall have charge of all the shellfisheries and shell and shellfish grounds lying in said town not granted to others and not under the jurisdiction of the Commissioner of Agriculture . . . ."

Shoreline Shellfish, LLC *v.* Branford

at issue.[3] We agree with the plaintiffs that, assuming that the ordinance does not conflict with § 26-266, on the basis of the clear and unambiguous language of the ordinance, there was a genuine issue of material fact regarding whether the defendant "owned" the shellfishing ground at issue. Therefore, the trial court improperly rendered summary judgment, and we reverse the judgment of the trial court and remand the case for further proceedings.

The following undisputed facts, as found by the trial court and contained in the record, and procedural history are relevant to our disposition of this appeal. This dispute involves a shellfishing ground, lot 511, which was available for lease in the town. The plaintiffs applied to the commission for a right of first refusal to lease lot 511, along with several other lots not at issue in this case. In exchange for the right of first refusal, the plaintiffs agreed to explore certain areas for potential shellfishing grounds and to share the information it collected with the commission. After this agreement was entered into, one of the plaintiffs' competitors applied to lease lot 511. At the commission's next meeting, the commission deferred action on the competitor's application because of the plaintiffs' existing right of first refusal. The plaintiffs then exercised their right of first refusal and applied to lease lot 511, but the commission instead leased lot 511 to the plaintiffs' competitor.

The named plaintiff, Shoreline Shellfish, LLC, then brought this action, alleging breach of contract and promissory estoppel, and, specifically, that it enjoyed a

---

[3] Alternatively, the plaintiffs argue that, even if § 88-8 applies to lot 511, the shellfishing ground at issue, and the defendant therefore retains authority to approve leases under the ordinance, the ordinance is invalid because it is contrary to controlling state statutes. Specifically, the plaintiffs claim that § 88-8 is invalid insofar as it permanently prohibits the taking of shellfish from certain designated areas, in violation of § 26-266. Because we conclude that § 88-8 only authorizes the selectmen to approve leases of shellfishing grounds to which the defendant holds legal title, we do not reach this claim.

Shoreline Shellfish, LLC *v.* Branford

right of first refusal. The defendant moved for summary judgment, arguing that the right of first refusal was not a valid or enforceable contract because the commission lacked authority to enter into it. The defendant argued that the commission's authorization was precluded by § 88-8 of the code, which provides in relevant part that "[n]o lease, license or transfer of shellfishing grounds owned by . . . Branford shall be permitted without the approval of the Board of Selectmen. . . ." The trial court rendered summary judgment in favor of the defendant because there was no evidence that the selectmen had approved the right of first refusal agreement. The trial court based its decision on its interpretation of § 26-266 (a), a statute that is applicable only to the defendant and provides in relevant part that "[t]he selectmen of the town of Branford or shellfish commission . . . shall have charge of all the . . . shellfish grounds lying in said town not granted to others and not under the jurisdiction of the Commissioner of Agriculture . . . ." The trial court determined that § 26-266 unambiguously "provides [the defendant] with discretion to authorize either the . . . [s]electmen or the commission, or both, to exercise the powers and fulfill the duties provided by § 26-266 (a)." The trial court further determined that, although § 88-4 of the code establishes the powers of the commission, which include the authority to issue shellfish licenses, § 88-8 limits the commission's authority by requiring the selectmen to approve any lease of or license to shellfishing grounds. Without explicitly considering whether § 88-8 also places limits on the authority of the selectmen by requiring their approval only with respect to leases of and licenses to shellfishing grounds "owned by" the defendant, the trial court determined that § 88-8 required the selectmen to approve any lease of or license to shellfishing grounds located in the town and, thus, concluded that there was no genuine issue of material fact that the commission lacked authority to lease lot 511.

Shoreline Shellfish, LLC *v.* Branford

The plaintiffs appealed to the Appellate Court. We then transferred the appeal this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiffs claim that the trial court improperly granted summary judgment in favor of the defendant because it misconstrued § 26-266. They argue that § 26-266, which the parties do not dispute applies,[4] does not allow the defendant to split authority between the commission and the selectmen, as provided in § 88-8, and, thus, § 88-8 is invalid. Alternatively, the plaintiffs claim that, even if the ordinance is valid under § 26-266, there is a genuine issue of material fact as to who owns lot 511, which affects whether the selectmen are required to approve the lease or license under § 88-8. Specifically, the plaintiffs argue that the phrase "owned by" in § 88-8 limits the authority of the selectmen to lease shellfishing grounds owned by the defendant and that the defendant presented no evidence regarding ownership of the lot.

The defendant responds that the trial court correctly concluded that § 26-266 authorizes the town to share authority between the commission and the selectmen, and, thus, the trial court properly rendered summary judgment in favor of the defendant. The defendant further responds that there is no genuine issue of material fact regarding ownership because the phrase "owned by" in § 88-8 means "shellfishing grounds for which [the defendant] controls the proprietary right to cultivate and harvest shellfish" or "shellfish ground lying in [Branford]," and, thus, any lease of or license to the shellfishing grounds located in the town must be approved by the selectmen. In support of this argument, the defen-

_____

[4] We note that § 26-266 (a) applies only if lot 511 has not been "granted to others . . . ." The parties do not dispute that this exception is inapplicable. No evidence was offered in support of the defendant's motion for summary judgment regarding whether lot 511 ever has been "granted to others . . . ."

Shoreline Shellfish, LLC *v.* Branford

dant stresses that, because the public trust doctrine applies, "owned by" cannot mean ownership of the underlying fee.

We agree with the plaintiffs that, even if we assume that § 88-8 does not conflict with § 26-266, on the basis of the clear and unambiguous language of § 88-8, a genuine issue of material fact as to who owns lot 511 prevents the granting of summary judgment.

The scope of our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. See, e.g., *Rutter* v. *Janis*, 334 Conn. 722, 729, 224 A.3d 525 (2020). "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . . A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Id.

To the extent that the trial court's decision to render summary judgment requires us to construe a municipal ordinance, our review is also plenary and is guided by our well established legal principles regarding statutory construction. See, e.g., *Ventura* v. *East Haven*, 330 Conn. 613, 631–32, 199 A.3d 1 (2019). "A local ordinance is a municipal legislative enactment and for purposes of appeal is to be treated as though it were a statute." *Duplin* v. *Shiels, Inc.*, 165 Conn. 396, 398, 334 A.2d 896 (1973). In construing statutes, "General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the mean-

Shoreline Shellfish, LLC *v.* Branford

ing of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation.'' (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302–303, 140 A.3d 950 (2016).

Because we assume, without deciding, that the trial court properly interpreted § 26-266 not to conflict with § 88-8 of the code, we begin our analysis by examining the language of that ordinance, which provides in relevant part: ''No lease, license or transfer of shellfishing grounds *owned by* . . . Branford shall be permitted without the approval of the Board of Selectmen. . . .'' (Emphasis added.) Branford Town Code, c. 88, § 88-8. The word ''owned'' is not defined in § 88-8 or elsewhere in the code. When words or phrases are not statutorily defined, ''General Statutes § 1-1 (a) directs that we construe [a] term according to its commonly approved usage, mindful of any peculiar or technical meaning it may have assumed in the law. We may find evidence of such usage, and technical meaning, in dictionary definitions, as well as by reading the statutory language within the context of the broader legislative scheme.'' *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015). Further, ''[i]t is well established that, to construe technical legal terms, we look for evidence of their familiar legal meaning in a range of legal sources, including other statutes, judicial decisions, and the common law.'' Id., 868. Technical terms can be legal terms as well as terms associated with the trade or business with which a given statute is concerned, and ''the terms in question should be accorded the meaning which they would convey to an informed person in the [applicable] trade or business.'' *Hardware Mutual Casualty Co.* v. *Premo*, 153 Conn. 465, 475, 217 A.2d 698 (1966).

Dictionary definitions from the time the ordinance was enacted are especially instructive. See, e.g., *State* v. *Menditto*, supra, 315 Conn. 866. At the time that § 88-8 was adopted in 1997, Black's Law Dictionary defined the verb "own" as "[t]o have good legal title; to hold as property; to have a legal or rightful title to; to have; to possess." Black's Law Dictionary (6th Ed. 1990) p. 1105. Webster's Third New International Dictionary similarly defined this term as "to have or hold as property or appurtenance: have a rightful title to, whether legal or natural: possess." Webster's Third New International Dictionary (1991) p. 1612.

However, our inquiry does not end here because the phrase "owned by" has taken on a particular meaning in the context of shellfishing grounds located below the mean high watermark, which are subject to the public trust doctrine. See *State* v. *Sargent & Co.*, 45 Conn. 358, 372 (1877). The public trust doctrine is a legal doctrine that controls the nature of legal title to and ownership of submerged lands of this kind. See, e.g., *Leydon* v. *Greenwich*, 257 Conn. 318, 332 n.17, 777 A.2d 552 (2001). Therefore, interpreting the meaning of the phrase "owned by" in § 88-8 requires us to look to a range of legal sources that explain the contours of Connecticut's public trust doctrine.

The public trust doctrine evolved from English common law. At common law, the king, "as parens patriae, held the title to the soil under the sea between high and low [watermark]; he held it not for his own benefit but for his subjects at large . . . he held it in trust for public uses . . . the most important of which are those of fishing and navigation." *State* v. *Sargent & Co.*, supra, 45 Conn. 372. In Connecticut, it has been settled for centuries that "the public, representing the former title of the king, is the owner in fee of such flats up to high [watermark] . . . ." *Simons* v. *French*, 25 Conn. 346, 352 (1856). These lands are held in trust for the public

Shoreline Shellfish, LLC *v.* Branford

by the state legislature. See *Rowe* v. *Smith*, 48 Conn. 444, 447 (1880).

Title to shellfishing grounds, as land subject to the public trust doctrine, is composed of two parts: the private rights and the public rights. "The ownership of the soil, analogous to the ownership of dry land, was regarded as [a private right], and was vested in the crown. But the right to use and control both the land and water was deemed a [public right], and was vested in parliament. . . . In this country the state has succeeded to all the rights of both crown and parliament in the navigable waters and the soil under them, and here the [private rights] and the [public rights] are both vested in the state." (Internal quotation marks omitted.) *Illinois Central Railroad Co.* v. *Illinois*, 146 U.S. 387, 466, 13 S. Ct. 110, 36 L. Ed. 1018 (1892) (Shiras, J., dissenting); see *Lane* v. *Board of Harbor Commissioners*, 70 Conn. 685, 694–95, 40 A. 1058 (1898).

The public trust doctrine allows the state, through the legislature, to grant the private rights to these grounds to private individuals or other entities. See *Lovejoy* v. *Norwalk*, 112 Conn. 199, 212, 152 A. 210 (1930). "In Connecticut, the title to the soil underneath the waters of the marginal sea, below [high watermark] . . . is in the state as trustee for the public, subject only to navigation, except as the title may be affected by lawfully acquired privileges or franchises of littoral proprietors or others, such as shellfishermen, who by statute may acquire, by lease or perpetual franchise, the exclusive right to plant, cultivate and harvest shellfish on designated grounds." *State* v. *Hooper*, 3 Conn. Cir. 143, 148–49, 209 A.2d 539 (1965).

Although the legislature always retains ultimate responsibility for lands subject to the public trust doctrine, it may delegate authority to manage these lands to designees, including municipalities. *State* v. *Sargent*

Shoreline Shellfish, LLC *v.* Branford

*& Co.*, supra, 45 Conn. 373. For example, the legislature may delegate directly to town selectmen authority to make grants of private rights. See General Statutes (1902 Rev.) § 3261 ("[t]he selectmen of East Haven shall have exclusive authority to designate, for the planting and cultivation of oysters thereon . . . the grounds covered by the navigable waters"). The legislature also may delegate to municipalities authority to create a shellfish commission, which may then receive a delegation of authority from the state. For example, § 26-266 (a) gives "charge of all the . . . shellfish grounds lying in [Branford]" to the "selectmen . . . or shellfish commission," leaving it to the defendant to decide whether to create a commission.

Whether directly or through a designee, such as a municipality, the state historically has chosen to make perpetual grants, or perpetual franchises, of the private rights to shellfishing grounds. These grants convey legal title via written instrument and are recorded in the municipality's land records. See General Statutes (1887 Rev.) § 2317 ("[The Board of Commissioners of Shellfisheries] shall . . . be empowered, in the name and in behalf of the State, to grant by written instruments, for the purpose of planting and cultivating shell-fish, perpetual franchises in . . . undesignated grounds . . . . [A]ll such grants . . . shall also be recorded in the town clerk's office . . . ."). The grants, once made, similarly can be transferred by quitclaim deed. For example, in *Ball* v. *Branford*, 142 Conn. 13, 110 A.2d 459 (1954), this court explained how "the plaintiff obtained, by quitclaim deed, the rights in numerous oyster lots then owned by the Stony Creek Oyster Company, a [company] that had been in the business of planting and cultivating oysters since 1870. During the course of its long existence this [company] had from time to time bought from others various oyster grants." Id., 15.

Shoreline Shellfish, LLC *v.* Branford

The recipients of these state grants of private rights are considered the "owners" of the shellfishing grounds. See, e.g., General Statutes § 26-196 ("the owner or owners of the adjoining grounds"); General Statutes § 26-207 ("[a]ny owner of shellfish grounds . . . lying within the exclusive jurisdiction of the state"); *Lovejoy* v. *Norwalk*, supra, 112 Conn. 200 (preliminary statement of facts and procedural history) ("[t]he plaintiff is the owner of oyster grounds situated under the navigable waters of [the] Long Island Sound"); *White* v. *Petty*, 57 Conn. 576, 577, 18 A. 253 (1889) ("[t]he complainant alleges that she is the owner of various oyster lots in the town of Darien"). Although a recipient of a state grant of private rights is deemed the "owner," because of the public trust doctrine, ownership is limited to the private rights to the shellfishing grounds. This is because, even when the private rights have been granted, the public retains its rights, which remain held in trust by the state. "The control of the state for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining." *Illinois Central Railroad Co.* v. *Illinois*, supra, 146 U.S. 453. Shellfishing grounds subject to the public trust doctrine "cannot be disposed of to the detriment of the public interest." *Lovejoy* v. *Norwalk*, supra, 205. Accordingly, any ownership right in shellfishing grounds is limited in that it cannot interfere with the public rights. Id.; see also *Illinois Central Railroad Co.* v. *Illinois*, supra, 453.

Thus, our prior case law regarding the public trust doctrine makes clear that ownership of shellfishing grounds means holding legal title to the exclusive right to plant, cultivate and harvest shellfish on a specified lot. This title may be acquired by direct grant from the state or its designee, or by transfer from the previous

Shoreline Shellfish, LLC *v.* Branford

owner of the private rights to the shellfishing grounds. Because of the public trust doctrine, the state's inability to transfer the public rights to these grounds means that "ownership" in the context of shellfishing grounds cannot mean fee simple absolute ownership.[5] See *Love-joy* v. *Norwalk*, supra, 112 Conn. 205.

When the private rights to shellfishing grounds have not been granted, then both the public rights and the private rights to those grounds remain owned by the people of Connecticut, held in trust by the state. See *Rowe* v. *Smith*, supra, 48 Conn. 447 ("[In] the people of the state . . . remains the proprietorship of fisheries, shell and floating, in its navigable waters. Towns have no ownership in or control over them. The legislature alone can create an individual proprietorship in them."). When ownership of the private rights to shellfishing grounds is retained by the people, held in trust by the state, the legislature has the authority to license or lease these grounds to private individuals or entities. In the present case, the people of Connecticut are the licensors or lessors of the private rights, and the license or lease is executed by the state or its designee, on behalf of the people. As with the authority to grant ownership of shellfishing grounds, which we discussed previously, the legislature may delegate the authority to license or lease shellfishing grounds to a state agency or a municipality without conveying an ownership interest to that designee. For example, § 26-266 (a) establishes that, in Branford, the state has delegated "charge of all the . . . shellfish grounds . . . not granted to others" to the "selectmen . . . or shellfish commission . . . ." When shellfishing grounds are leased or licensed rather than granted, the people of Connecticut are the licensors or lessors of the private rights, and the license or lease is executed by the state or its designee on the people's behalf.

─────────

[5] "Fee simple absolute" is defined as "[a]n estate of indefinite or potentially infinite duration . . . ." Black's Law Dictionary (11th Ed. 2019) p. 760.

Shoreline Shellfish, LLC *v.* Branford

Thus, under the public trust doctrine, shellfishing grounds are "owned by" whoever has been granted the private rights to those grounds, although to maintain the public's rights to these lands under that doctrine, the private rights are limited. If no one has been granted these private rights, then the people of Connecticut remain the owners of the grounds, although the state or its designee, including a municipality or commission, may lease or license the grounds to private individuals. Shellfishing grounds, however, are not "owned by" a municipality in the absence of a granting of private rights, even if the legislature enables a municipality to lease or license shellfishing grounds located within its borders. See *Rowe* v. *Smith*, supra, 48 Conn. 447.

In light of this case law, we return to the language of § 88-8, which requires the approval of the selectmen only for the "lease, license or transfer" of shellfishing grounds "owned by . . . Branford . . . ." Under the particular, technical definition of the phrase "owned by," established by our case law regarding the public trust doctrine, the defendant owns lot 511 only if it held title to a grant of the private rights to the lot. Thus, under the clear and unambiguous language of the ordinance, the selectmen had authority to approve the leasing of lot 511 only if the defendant had been granted the private rights over lot 511. Because the defendant offered no evidence regarding whether it had been granted the private rights to lot 511, there remained a genuine issue of material fact as to whether lot 511 was "owned by" the defendant, and, thus, the trial court improperly granted summary judgment in the defendant's favor.

Nevertheless, the defendant contends that the phrase "shellfishing grounds owned by . . . Branford" within § 88-8 must refer to all "shellfishing grounds for which the [defendant] controls the proprietary right to cultivate and harvest shellfish," which, the defendant argues, is the same as "shellfish grounds lying in [Branford]" under § 26-266 (a). This interpretation is unrea-

Shoreline Shellfish, LLC *v.* Branford

sonable. To interpret the word "own" to mean "control"
is contrary to its plain meaning, both under its diction-
ary definition and our case law discussing the particular
meaning of the word under the public trust doctrine.
The defendant's only rationale for its desired interpre-
tation appears to be that the term "owned" "cannot be
reasonably construed to mean ownership of the under-
lying fee interest." While we agree with the defendant
about what the word "owned" does *not* mean; see foot-
note 4 of this opinion; we cannot agree that we must
therefore adopt the defendant's proffered alternative
definition, "control." We have established that to "own"
shellfishing grounds means to hold legal title to the pri-
vate rights to those grounds. By contrast, "control" is
defined as the "[p]ower or authority to manage, direct,
superintend, restrict, regulate, govern, administer, or
oversee." Black's Law Dictionary (6th Ed. 1990) p. 329.
These definitions clearly are distinct. Here, "control of
the proprietary right to harvest and cultivate shellfish"
refers to the authority—delegated to the defendant by
the state—to manage and direct the license, lease, or
grant of shellfishing grounds on the state's behalf, not
to ownership of the private rights to the shellfishing
grounds themselves.

The defendant has not met its burden of establish-
ing that it owns lot 511, as § 88-8 requires, because it
advanced no evidence or documentation establishing
that it has been granted the private rights to lot 511.
On remand, evidence of ownership, to the extent neces-
sary, on the basis of the claims raised and litigated by
the parties, might include a written instrument—a quit-
claim deed, for example—listing the defendant as the
owner. Written instruments are required for the transfer
of an ownership interest in shellfishing grounds under
General Statutes § 26-249.[6] Evidence of ownership also

---

[6] General Statutes § 26-249 provides in relevant part: "[A]ny place lawfully
designated [for the cultivation of shellfish] . . . shall be transferable by
written assignment . . . ."

Shoreline Shellfish, LLC *v.* Branford

could include evidence that a grant in the defendant's name was recorded in the town's land records or oyster book, as required by General Statutes § 26-243 and its predecessors.[7] Evidence that the defendant does not own lot 511, on the other hand, might include the defendant's bed numbering system, as contained in this record, which uses different numbers for privately granted beds and lots available for lease by the commission.

We recognize that, on remand, the defendant might be unable to prove that it owns lot 511, that the court might ultimately resolve this dispute on other grounds or that, to resolve this dispute, it might become necessary to engage in further statutory construction of § 26-266 or §§ 88-3 and 88-4 of the code. For example, if the defendant does not own lot 511, the trial court might need to determine whether § 88-3 or § 88-4 actually authorizes the commission to lease shellfish beds not owned by the town. The trial court might also need to determine whether the ordinance divides authority between the commission and the selectmen, and, if so, whether that division conforms with the language of § 26-266 (a), which gives charge of the shellfish beds to the "selectmen . . . or shellfish commission." Finally, regardless of whether the defendant proves that it owns lot 511, the trial court might need to determine whether § 26-266 applies at all, as discussed in footnote 3 of this opinion. We do not reach these issues here because the

_____

[7] General Statutes § 26-243 provides in relevant part: "The selectmen of each town in which places have been designated in its navigable waters for planting or cultivating oysters, clams or mussels shall provide a book, to be kept by the town clerk, for recording . . . the written designation and descriptions of the places designated and set out thereon, and all assignments of such places. The town clerk shall . . . make an alphabetical index of all such applications, designations and assignments, specifying the names of the applicants and of the assignors and assignees, separately; and an attested copy of any such application, designation or assignment, with a certificate that it has been recorded, shall be conclusive evidence of the fact of such record and prima facie evidence of the validity of such application, designation or assignment."

plain meaning of "owned by" in § 88-8 is dispositive of the issue before us, namely, whether the trial court properly granted summary judgment in favor of the defendant.

Because we conclude that there is a genuine issue of material fact regarding whether lot 511 was "owned by" the defendant and, thus, who had authority to lease lot 511 under § 88-8 of the code, we conclude that the trial court improperly granted summary judgment in favor of the defendant.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

————————————————