SHERMAN F. KLAPPROTH *v.* JAMES TURNER

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued February 8—decided March 20, 1968

*Michael P. Koskoff*, with whom, on the brief, was *Theodore I. Koskoff*, for the appellant (defendant).

*Charles H. Fischer, Jr.*, with whom, on the brief, was *Herbert D. Fischer*, for the appellee (plaintiff).

ALCORN, J.  The facts are undisputed. The defendant, a builder, had employed two or more employees, including the plaintiff, for several months prior to August 20, 1965. On August 20, the defendant discharged two employees, and from that date until Saturday, August 28, the plaintiff was the defendant's only employee. On Tuesday, August 31, the defendant rehired one of the discharged employees, and on the following day he hired two more employees. From September 1, 1965, until well into the month of December, 1965, the defendant had two or more employees. On August 28, however, while the plaintiff was working alone, he sustained a serious back injury arising out of and in the course of his employment. The plaintiff applied for, and the workmen's compensation commissioner awarded him, compensation for this injury. The defendant appealed to the Superior Court, which affirmed the award, and the defendant has taken this appeal from that judgment.

Before October 1, 1961, the Workmen's Compensation Act appeared as chapter 566 in the 1958 Revision of the General Statutes and embraced, as amended in 1959, §§ 31-139 through 31-221a. Section 31-139 defined an employer, so far as now material, as "any person . . . within the state using the services of another for pay." Section

31-148 abolished common-law defenses in an action to recover damages for the injury or death of an employee arising out of the employment. Section 31-149 specified that the provisions of § 31-148 should "not apply to actions to recover damages for personal injuries sustained by employees of any employer having regularly fewer than two employees."

In 1961, the General Assembly repealed chapter 566 of the 1958 Revision of the General Statutes, as amended in 1959, in its entirety (Public Acts 1961, No. 491 § 82) and, in its place, enacted what is now chapter 568 of the General Statutes encompassing §§ 31-275 through 31-355. Public Acts 1961, No. 491 §§ 1–81. Under the statutes as so amended, § 31-275 defines an employer, so far as now material, as "any person . . . within the state using the services for pay of two or more employees." Section 31-284 provides in part that "[a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained."

This appeal arises as a result of the variation in the phraseolgy of the quoted sections of the statutes. Because the plaintiff was injured while working alone, the defendant, his employer, disclaims any liability under the Workmen's Compensation Act. The claim, in short, is that the act prior to the 1961 amendment applied to an employer who "regularly" employed two or more employees and that, by the omission of the word "regularly" in the present law, the employer is not subject to the act unless at least two employees are actually employed at the time of the injury. We note in passing that a more accurate statement would have been that,

prior to 1961, the statute which abolished common-law defenses did not apply to an employer who regularly employed fewer than two employees.

The defendant tacitly concedes that, under the statutes as they existed before 1961, he would be required to pay compensation to the plaintiff because he would be an employer who "regularly" employed two or more employees. He denies, however, that the law as it now stands imposes any responsibility on him.

The purpose of the workmen's compensation law has always been to provide compensation for an injury arising out of and in the course of the employment regardless of fault, and the statutes are to be broadly construed to effectuate that purpose. *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 146, 93 A. 245. The underlying objective is to provide for the workman and those dependent on him. *Reid* v. *Hartford Fuel Supply Co.*, 120 Conn. 541, 546, 182 A. 141; *Bassett* v. *Stratford Lumber Co.*, 105 Conn. 297, 299, 135 A. 574. We can properly presume that the General Assembly acted in 1961 with the knowledge of this long-standing construction which this court has given to the objective and purpose of legislation in this field. *Forman Schools, Inc.* v. *Litchfield*, 134 Conn. 1, 6, 54 A.2d 710.

What then was the purpose and effect of the amendment made to the law by the General Assembly in 1961? It is a recognized presumption that an amendatory act does not change the law further than is expressly declared or necessarily implied. *Norwalk* v. *Daniele*, 143 Conn. 85, 89, 119 A.2d 732. A comparison of the statutes indicates that the 1961 amendment adopts a positive phrasing of the subject matter rather than the negative phraseology used before 1961. Under § 31-139, an employer

was anyone within the state "using the services of another for pay." This statute was followed by § 31-148, which, in broad terms, abolished common-law defenses in all actions to recover damages for the injury or death of an employee arising out of the employment. The generality of § 31-148 was then limited by § 31-149, which provided that § 31-148 should *not* apply to such actions "by employees of any employer having regularly fewer than two employees."

The language used in the 1961 amendment takes a different approach. Under § 31-275, an employer is "any person . . . within the state using the services for pay of two or more employees." Section 31-284 then provides that such an employer "shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment."

The question decisive of the appeal is to be answered by the meaning to be ascribed to the new definition of an employer as one "using the services for pay of two or more employees." The intent of a statute is to be sought first in the language used, and if that is unambiguous we need not resort to other aids of interpretation. *Mad River Co.* v. *Wolcott*, 137 Conn. 680, 686, 81 A.2d 119. The words used are to be construed according to their commonly approved usage. General Statutes § 1-1; *Hardware Mutual Casualty Co.* v. *Premo*, 153 Conn. 465, 474, 217 A.2d 698; *State* v. *Benson*, 153 Conn. 209, 214, 214 A.2d 903; *Baker* v. *Norwalk*, 152 Conn. 312, 315, 206 A.2d 428. Or, stated another way, statutory language is to be given its plain and ordinary meaning. *State* v. *Taylor*, 153 Conn. 72, 82, 214 A.2d 362.

The obvious purpose of the General Assembly

was to fix, by means of §§ 31-275 and 31-284, the boundaries within which the compensation act is to be compulsory. It accomplished this purpose by providing in those two statutes that one who uses for pay the services of two or more employees shall be free from liability in the ordinary common-law action for damages but, instead, shall provide for benefits for his employees under chapter 568. It is unreasonable to assume that the General Assembly, in endeavoring to accomplish the underlying purpose of the statutes with which it was dealing, namely, to provide for the injured workman regardless of fault, intended to permit the employer "to oscillate between coverage and exemption as his labor force exceeds or falls below the minimum from day to day." 1A Larson, Law of Workmen's Compensation § 52.20. No firm protection would be afforded the employee if, under the terms of the act, his right to compensation was made to depend upon the fluctuating number of his fellow employees as determined by the whim either of his employer or of his fellow workers.

As previously indicated, the General Assembly is presumed to have acted with the knowledge that the objective was the protection of the employee. The language it used indicates that awareness. The word "using" connotes the act of making use of. The word "use," in its noun form, has the commonly accepted meaning of a "habitual or customary practice" or an "accustomed or usual procedure." Webster, Third New International Dictionary. Thus, the clear import of § 31-275 in defining an employer as one "using the services for pay of two or more employees" is that the employer is one who is using those services "habitually," "customarily," or in an "accustomed or usual procedure."

It is significant that this meaning does not differ materially from the commonly accepted definition of the word "regularly" which is "in a regular . . . or methodical way." Webster, Third New International Dictionary. Consequently, we find nothing in the 1961 revision of the law which either expressly or by necessary implication changed the law as it formerly existed.

We conclude that the General Assembly, in its enactment of what is now chapter 568 of the General Statutes, made no alteration in the previously established tests to be applied in determining when an employer is to be held to be subject to the Workmen's Compensation Act.

There is no error.

In this opinion the other judges concurred.