WINDHAM COMMUNITY MEMORIAL HOSPITAL *v.* CITY OF WILLIMANTIC

SHAPIRO, LOISELLE, MACDONALD, BOGDANSKI and HEALEY, Js.

Argued November 14, 1973—decision released March 5, 1974

*Antoinette L. Dupont,* with whom, on the brief, was *Ralph P. Dupont,* for the appellant (plaintiff).

*J. Vincent Hauser,* corporation counsel, for the appellee (defendant).

*John Q. Tilson* and *William H. Prout, Jr.,* as amici curiae.

SHAPIRO, J. This is an action brought by the plaintiff, the Windham Community Memorial Hospital, to recover from the defendant, the city of Willimantic, for hospital services rendered to Donald Loiseau, who had been shot and wounded by a police officer in Willimantic while Loiseau was attempting to flee after having been discovered in the act of committing a felony in that city. The officer summoned an ambulance and Loiseau was taken to the hospital, where he remained for a period of time. The plaintiff billed the city for the hospitalization which the defendant refused to pay. Following a trial in which a recovery was sought, the court rendered judgment for the defendant and the plaintiff has appealed.

The plaintiff assigns error in the trial court's refusal to find certain facts which it claims are

admitted or undisputed, in finding certain facts in language of doubtful meaning, in reaching certain conclusions unsupported in the finding, in overruling its claims of law and in rendering judgment for the defendant.

The appeal is defective in form because it is taken from the court's memorandum of decision rather than from the final judgment. Practice Book § 600; General Statutes § 52-263; *Howarth* v. *Northcott,* 152 Conn. 460, 462, 208 A.2d 540; *Levay* v. *Levay,* 137 Conn. 92, 95, 75 A.2d 400; Maltbie, Conn. App. Proc. § 10. The defendant, however, by failing to move to dismiss the appeal, has waived the defect. *Teitelman* v. *Bloomstein,* 155 Conn. 653, 655, 236 A.2d 900; *Desmarais* v. *Pinto,* 147 Conn. 109, 110, 157 A.2d 596.

The plaintiff has assigned error in the refusal by the court to find certain facts which it claims are admitted or undisputed. Two of the paragraphs in dispute, containing material facts, are not contested by the defendant as stated in its counter finding, and also are supported by evidence printed in the appendix to the plaintiff's brief. These are added to the finding.[1] Practice Book § 622 (b); see also *King* v. *Spencer,* 115 Conn. 201, 204, 161 A. 103; Maltbie, Conn. App. Proc. § 158. As to the remaining paragraphs recited in the draft finding, we find no merit to the other corrections sought. We also find no merit to the claim that the facts found in two

---

[1] These paragraphs recite the following: "9. The Police Department of the City of Willimantic had authorized Officer Haddad to exercise his discretion as to whether or not medical care should be sought for a prisoner . . . . 15. Meals and lodging for prisoners held in custody by the City of Willimantic Police Department were customarily paid for by the City of Willimantic."

paragraphs of the court's finding of facts appear in language of doubtful meaning so that their real significance does not clearly appear.

The court's finding, as corrected, recites the following facts: On December 27, 1964, Edward Haddad, a police officer employed by the city of Willimantic, while in the course of performing his duties and in attempting to apprehend Donald Loiseau, shot and wounded Loiseau, who had been engaged in a felony within the city of Willimantic. After having been shot, Loiseau was in need of immediate medical and hospital care and Officer Haddad telephoned for an ambulance. The police department of the city of Willimantic had authorized Officer Haddad to exercise his discretion as to whether medical care should be sought for a prisoner. Loiseau was removed to the plaintiff hospital, where he was a patient for a period of twenty-five days, from December 27, 1964, to January 21, 1965. During that time he was guarded by the police of the defendant city on an around-the-clock basis. Calculated at private patient or published rates, the reasonable amount of the hospital bill for the necessary services rendered to Loiseau is $1261.95. The plaintiff, through its administrator, notified the defendant by letter dated December 29, 1964, that Loiseau was a patient in the hospital under police arrest and that the plaintiff looked to the defendant for payment of the hospital bill. The plaintiff also billed the towns of Windham and Columbia as well as Loiseau and his parents. The chief of police of the city of Willimantic has charge of a jail or station house which includes a lockup for prisoners and has charge of, and custody and control of, all persons committed to or confined in said station

house. Meals and lodging for prisoners held in custody by the police department were customarily paid for by the city of Willimantic.

The court reached the following conclusions: The summoning of an ambulance by a police officer in order that a person wounded by him may have immediate medical care does not constitute an implied promise that the resulting hospital bill will be paid by the municipality; there was no express or implied promise by the defendant to pay the bill; a requirement of the charter and ordinances of the defendant city that its chief of police be responsible for any prisoner confined in the station house, or a policy of paying for meals for any person so confined, does not justify a conclusion as to responsibility for a hospital bill; the rendering of hospital services with the expectation of payment does not impose responsibility on the defendant even though notified; the plaintiff has failed to show a promise by the defendant to pay the hospital bill or a duty to do so and has failed to establish the defendant's liability for payment.

The plaintiff assigns error in these conclusions of the court. The court's conclusions are to be tested by the finding. *Walsh* v. *Turlick,* 164 Conn. 75, 79, 316 A.2d 759; *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645. The conclusions which the court reached must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Walsh* v. *Turlick,* supra; *Hames* v. *Hames,* 163 Conn. 588, 592, 316 A.2d 379; *Covino* v. *Pfeffer,* 160 Conn. 212, 216, 276 A.2d 895.

Before discussing the claims of law made by the plaintiff, we note that a substantial part of the

appendix to its brief, upon which it relies for support of its claims, consists of "Opinions and Advices of Attorney General." These opinions, covering the period from 1961 to 1970, set forth generally that there exists a town's legal responsibility for necessary medical and hospital bills for persons held under arrest by its police. In its brief, the plaintiff urges that these opinions are usually regarded by courts as highly persuasive and entitled to substantial weight. We have no reason to dispute this valid contention. We point, however, to General Statutes § 3-125, which sets forth the duties of the attorney general. The opinions of the attorney general have in no sense the effect of judicial utterances. Where a question of law is before a court for determination, an opinion previously rendered by the attorney general on that question, while entitled to careful consideration and quite generally regarded as highly persuasive, is not binding on the court. 7 Am. Jur. 2d, Attorney General, § 8. Accordingly, while we give due consideration to these opinions, we must be guided by the applicable law as it may relate to the issues on appeal.

The plaintiff makes the basic claim that the defendant had the duty to provide necessary medical care and hospitalization for one who has been arrested and is being held pending original presentment in court, and that it is bound to pay the reasonable value of necessaries, including necessary hospital and medical care, furnished to a prisoner awaiting trial and being held by the defendant's police department.[2]

---

[2] We note that the statement of facts contained in the plaintiff's brief recites: "Although the Hospital wrote to the Towns of Windham, Columbia, and the patient seeking payment, none was forthcoming because the patient was a minor, his parents were indigent, and the Towns were not liable under any statute or rule

Prior to October 1, 1960, responsibility for certain care and treatment of prisoners in jail was imposed upon the various counties of the state. General Statutes § 18-40 required the furnishing of suitable bedding and fuel at the expense of the county. Section 18-41 required the county commissioners to provide a safe room within the jail building for the confinement of sick prisoners with provision for their proper care and nursing. Section 18-48 required jailers to procure suitable food, clothing and medical aid for prisoners committed on criminal process. By virtue of Public Acts 1959, No. 152, which abolished county government, the aforementioned statutes, among others, were repealed. The plaintiff contends, however, that in the adoption of §§ 7-134, 7-135 and § 7-135a,[3] the legislative intent was to place the expense of hospitalization in a case like that of Loiseau prior to

---

of law." We also note in the defendant's brief a discussion of statutes relating to a town's obligations concerning support, and medical and hospital care for paupers. The record, however, is completely devoid of any reference to the financial status of Donald Loiseau or his parents. The finding is silent in that regard.

[3] "[General Statutes] Sec. 7-134. LOCKUP. The selectmen of any town and the warden and burgesses of any borough may erect or lease a suitable building or apartments within their respective communities for a lockup in which persons awaiting trial or examination for offenses committed in such town or borough may be confined until their cases are disposed of according to law.

"[General Statutes] Sec. 7-135. USE OF MUNICIPAL LOCKUP AND COMMUNITY CORRECTIONAL CENTER IN ANOTHER TOWN. As used in this section and section 7-135a, "lockup" means any municipal jail, lockup or place of detention of prisoners. Subject to the provisions of section 54-64, any officer authorized to make arrests in any town in which there is no suitable lockup, or in which the facilities of such lockup are exhausted or inadequate, shall procure a suitable lockup in an adjoining or nearby town or shall make arrangements with the nearest available community correctional center or the Connecticut Correctional Institution, Niantic, as the case may be, and shall remove thereto and cause to be detained therein any person under arrest pending arraignment before the court having jurisdic-

his presentment upon the defendant city. The construction of a statute depends upon its expressed intent when it is taken as a whole. *Connecticut Chiropody Society, Inc.* v. *Murray,* 146 Conn. 613, 617, 153 A.2d 412; *Fox* v. *Zoning Board of Appeals,* 146 Conn. 70, 73, 147 A.2d 472; *Clark* v. *Town Council,* 145 Conn. 476, 485, 144 A.2d 327. "The words used [in a statute] are to be construed according to their commonly approved usage. General Statutes § 1-1; *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 474, 217 A.2d 698; *State* v. *Benson,* 153 Conn. 209, 214, 214 A.2d 903; *Baker* v. *Norwalk,* 152 Conn. 312, 315, 206 A.2d 428. Or, stated another way, statutory language is to be given its plain and ordinary meaning. *State* v. *Taylor,* 153 Conn. 72, 82, 214 A.2d 362." *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886. We cannot agree with the

---

tion, and any municipal lockup, community correctional center or the Connecticut Correctional Institution, Niantic, as the case may be, to which request is made for the detention of any such person, which lockup, center or institution has suitable available facilities, may receive, provide for and feed such person, taking from such officer a temporary surrender statement, in such form as the commissioner of correction shall prescribe, and giving to such officer a receipt for such person. Such officer or his designated deputy shall have custody of and responsibility for such person to, from and at the place of arraignment and to and at the place of trial and the same authority over such person as if the lockup, community correctional center or institution were operated by the town in which the offense was committed." Note: Section 54-64 provides that police officials and Circuit Court clerks may take a written promise to appear in the Circuit Court or take a bond.

General Statutes § 7-135a, entitled "Reimbursement of towns for keeping and transporting prisoners," provides, in part: "The town operating any lockup wherein prisoners are detained for arraignment before, or trial by, the circuit court shall be reimbursed by the town where the offense took place for keeping, providing for and feeding such prisoners at the rate of two dollars and fifty cents for each twenty-four hours or fraction thereof of detention until the prisoner has been arraigned and thereafter such town shall be so reimbursed by the state."

claim that these statutes have any relevancy here. There is nothing in these statutes which in any way lends support to the plaintiff's claim of placing the expense of hospitalization upon the defendant. They touch in no way upon the claim made on a city, as a subdivision of government, in relation to the facts before us. We further point out that these statutes apply only to a town and in § 7-134 include a borough. They do not include a city and if the legislature had so intended it would have made that clear, as it has in numerous other statutes.[4] The city of Willimantic comprises territorial limits; the powers conferred upon it as a city are by special act of the General Assembly. We take judicial notice of the fact that the city of Willimantic lies within the town of Windham and that there is no town of Willimantic. The city of Willimantic is created by charter from the state. 11 Spec. Laws, No. 729, p. 1111 (1893). Thus, it became an independent municipal body, separate and distinct from the town of Windham, and its status as a municipal corporation is not affected by the fact that its territorial limits are embraced within those of the town of Windham. "A community of prescribed area is thereby constituted a body politic and corporate, with corporate name and continuous succession, for the purpose and with the authority of subordinate self-government and improvement to regulate local and internal affairs of the designated territory, through officers, selected by the corporation [citations omitted]." *Sachem's Head Property Owners' Assn.* v. *Guilford,* 112 Conn. 515, 517, 152 A. 877. Cities and towns are creatures of the state.

---

[4] This court has held that a city, borough or town constitutes a subdivision of the state. *Norwalk* v. *Daniele,* 143 Conn. 85, 88, 119 A.2d 732.

*Lacava* v. *Carfi,* 140 Conn. 517, 519, 101 A.2d 795.[5]
"As a creature of the state, a municipality can exercise only such powers as are expressly granted to it or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449; *Baker* v. *Norwalk,* 152 Conn. 312, 314, 206 A.2d 428; *Bredice* v. *Norwalk,* 152 Conn. 287, 292, 206 A.2d 433; *Ingham* v. *Brooks,* 95 Conn. 317, 328, 111 A. 209; *Crofut* v. *Danbury,* 65 Conn. 294, 300, 32 A. 365.

The essential contention made by the plaintiff is that the defendant was bound to provide necessary medical care and hospitalization for its prisoners and is thereby made responsible for the costs incurred; in any event, a promise to pay such expenses is necessarily implied.[6] One who demands payment

---

[5] We point to distinctions made by the General Assembly between a town, a city and a borough. As examples we cite a few: In General Statutes § 1-1 (m) the words "legislative body" are distinctly applied to towns, cities and boroughs. In General Statutes title 7, entitled "Municipalities," chapters 90, 91 and 92 relate almost entirely to "towns," except where a distinction is clearly made as to other municipal subdivisions. In chapter 97, under "General Provisions," § 7-101 refers to "town"; § 7-101a refers to "town, city, borough, consolidated town and city and consolidated town and borough"; § 7-103 refers to a "town, city or borough" officer; § 7-108 refers to "city and borough"; §§ 7-110, 7-113, 7-125b, 7-125c, 7-125d, 7-127a, 7-129, 7-130, 7-131, 7-131*l* refer to "town, city or borough." As stated earlier, § 7-134 refers to "town" and "borough"; § 7-135 to "town"; § 7-135a to "town"; §§ 7-139, 7-140, 7-142 refer to "city or borough"; §§ 7-144, 7-146, 7-147 refer to "town, city or borough."

[6] In its brief, the defendant points to three statutes, §§ 17-273, 17-274 and 17-292, as legislation by which provision is made for the medical needs of paupers. While, under § 17-272, the word "town" is defined as "the municipality liable," and even if we assume without deciding that the three statutes cited may have application to a city as well as a town in regard to support of paupers, there is not a single finding made by the court as to the financial status of

of a claim against a municipality must show some law authorizing it, or that it arises from some contract, express or implied, which is sanctioned by law. 17 McQuillin, Municipal Corporations (3d Ed. Rev.), p. 50. The defendant claims that neither it nor its agents, such as the police, have authority to enter into a binding contract with the plaintiff for the benefit of Loiseau. It is generally considered that a municipal corporation may become liable on an implied contract within the scope of its corporate powers, where the contract is deduced by inference from corporate acts or is a contract implied in law. In order that an implied contract, however, be binding on, and the basis of a recovery against, a municipality, it must be within the scope of its corporate powers; it must appear that there is statutory authority in the city to contract for the particular services. 63 C.J.S. 524, 526, Municipal Corporations, § 975. Section 12-1 of the charter of the defendant city provides, in part, as to the duties of the chief of police: "He shall have charge of the station house, and all persons who shall be committed to, or be confined in said station house shall be in his custody and control, by whomsoever arrested."

We have found no statute, no provision of its charter or ordinance that imposed a duty upon the defendant to provide medical and hospital services to one in the custody of the police, as was Loiseau.

Loiseau. Nor does the plaintiff's draft finding make any reference to his status as being that of a pauper. As stated earlier in footnote 2, in the facts recited in the plaintiff's brief there is mention made that Loiseau was a minor and his parents were indigent. A reference made merely in the "statement of facts" in the brief, without support in the finding, does not constitute a fact in the case. Accordingly, we do not consider §§ 17-273, 17-274 and 17-292 as having any relevancy to the issue before us.

The finding discloses that prisoners held in custody by the city police department were customarily furnished meals and lodging paid for by the defendant city; that Officer Haddad was authorized by the city's police department to exercise discretion as to seeking medical care for a prisoner; that because of having been shot Loiseau was in need of immediate medical and hospital care; that Officer Haddad summoned an ambulance; that during Loiseau's entire stay at the plaintiff hospital he was guarded around the clock by police of the defendant city. The court also found that on December 29, 1964, the plaintiff wrote to the defendant that it looked to the city for payment of the hospital bill. Nevertheless, these circumstances in themselves do not impose upon the defendant the legal responsibility of paying the hospital bill.

It has been held that, in the absence of express statutory authority, a police officer has no authority to create liability against the city upon a contract, express or implied, for medical services or hospital care to a person in official custody, and one furnishing such services or care may not recover from the city therefor in the absence of an agreement, acceptance, or ratification on the part of the governing body. *Trinity Hospital Assn.* v. *Minot,* 76 N.W.2d 916 (N.D.); 60 Am. Jur. 2d 17, Penal and Correctional Institutions, § 16; 61 Am. Jur. 2d, Physicians, Surgeons, and Other Healers, § 227. On the other hand, most of the cases cited by the plaintiff involve statutory authority for the imposition of liability. For example, in *Miller* v. *Dickinson County,* 68 Iowa 102, 26 N.W. 31, it was held that where the circumstances are such that a prisoner cannot be confined in jail because he was shot and

dangerously wounded, the county is liable for necessaries furnished him. This, however, was predicated upon a statute specifically requiring the sheriff to "furnish necessary bedding, clothing, fuel and medical aid for all prisoners under his charge." Also cited is the case of *Spicer* v. *Williamson,* 191 N.C. 487, 132 S.E. 291, where liability on the part of county commissioners to provide necessary medical care to prisoners confined in jail was based on a statutory duty. Also, in *Tulsa* v. *Hillcrest Medical Center,* 292 P.2d 430 (Okla.), where recovery was had against the city for medical services rendered by the defendant hospital to a prisoner on orders of the city's chief of police, the court concluded that under various statutes and a city ordinance making the chief of police responsible for the safekeeping of prisoners, the city became liable for necessary medical services thus obtained in the care of indigent city prisoners. Another case cited by the plaintiff, *Sisters of Charity* v. *Washington County,* 244 Ore. 499, 419 P.2d 36, was an action in which a hospital recovered against a county for treatment of a self-wounded prisoner who, while in the hospital, was kept under guard by a sheriff. Certain statutes specifically required that the keeper of the jail furnish medical aid to prisoners in his custody and that expenses for maintaining persons committed to jail for trial be paid out of the county treasury and the court held that the obvious purpose of the statutes was to assure medical services to persons imprisoned by the county.

In the present case, the court properly concluded that the summoning of an ambulance by the police officer did not constitute an implied promise that the resulting hospital bill will be paid by the defend-

ant. This is true even though the finding discloses that the police department authorized the officer to exercise discretion as to whether medical aid should be sought for a prisoner. The further conclusion, properly reached, is that there was no express or implied promise by the defendant city to pay the bill. Finally, the plaintiff has failed to establish that the defendant is liable for the bill and the court was correct in rendering judgment for the defendant.

There is no error.

In this opinion the other judges concurred.