Town of Greenwich *v.* Connecticut Transportation Authority et al.

House, C. J., Shapiro, Loiselle, MacDonald and Bogdanski, Js.

338

Argued March 7—decision released May 7, 1974

*William T. Lapcevic,* with whom was *A. William Mottolese,* for the appellant (plaintiff).

*Clement J. Kichuk,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellees (named defendant et al.).

*John D. Kernan* appeared for the appellees (defendant trustees of the Penn Central Transportation Company).

MacDonald, J.   The single issue presented by this appeal is whether the plaintiff, the town of Greenwich, can obtain injunctive relief under the provisions of the Environmental Protection Act of 1971 (§§ 22a-14 to 22a-20 of the General Statutes)[1] against the state of Connecticut and the Connecticut Transportation Authority in their operation of

---

[1] The plaintiff brought its action pursuant to § 22a-16 and sought the relief established by § 22a-18. The two statutes read as follows:

"[General Statutes] Sec. 22a-16. ACTION FOR DECLARATORY AND EQUITABLE RELIEF AGAINST POLLUTION. The attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the county wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in Hartford county, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction."

"[General Statutes] Sec. 22a-18. POWERS OF COURT. (a) The court may grant temporary and permanent equitable relief, or may impose such conditions on the defendant as are required to protect the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction.   (b) If administrative, licensing or other such proceedings are required or available to determine the legality of the defendant's conduct, the court in its discretion may remand the parties to such proceedings. In so remanding the parties the court may grant temporary equitable relief where necessary for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction and the court shall retain jurisdiction of the action pending completion of administrative action for the purpose of determining whether adequate consideration by the agency

the Cos Cob railroad power plant under an agreement which, pursuant to § 16-344,[2] is exempt from "state regulation."

The facts relevant to the determination of this issue are undisputed and may be briefly summarized. On June 26, 1972, the plaintiff brought an action against the defendants, the Connecticut Transportation Authority and the commissioner of transportation, seeking injunctive relief against emissions from the Cos Cob power plant which allegedly violated the sanitary code of the town of Greenwich, the public health code of the state of Connecticut and the Environmental Protection Act of 1971. The Cos Cob power plant is located at Cos Cob, within the geographical limits of the town of Greenwich, and generates electric power which operates a portion of the Penn Central Railroad.

On July 11, 1972, the defendants demurred to the plaintiff's complaint on several grounds, one of which was that § 16-344 exempts from state regulation the operation of railroad service under contract

has been given to the protection of the public trust in the air, water or other natural resources of the state from unreasonable pollution, impairment or destruction and whether the agency's decision is supported by competent material and substantial evidence on the whole record. (c) If the agency's consideration has not been adequate, and notwithstanding that the agency's decision is supported by competent material and substantial evidence on the whole record, the court shall adjudicate the impact of the defendant's conduct on the public trust in the air, water or other natural resources of the state in accordance with sections 22a-14 to 22a-20, inclusive. (d) Where, as to any administrative, licensing or other proceeding, judicial review thereof is available, the court originally taking jurisdiction shall maintain jurisdiction for purposes of judicial review."

[2] "[General Statutes] Sec. 16-344. EXEMPTION FROM STATE REGULATION. Mass transportation and railroad service operated pursuant to this compact or under contract with the Connecticut Transportation Authority shall be exempt from state regulation."

with the Connecticut Transportation Authority. On August 31, 1972, the plaintiff moved to amend its writ and complaint to add the Penn Central Transportation Company, the operator of the Cos Cob power plant, as a party defendant. Leave to join the Penn Central as a party defendant having been granted by the United States District Court for the Eastern District of Pennsylvania, the plaintiff's motion was granted, and the Penn Central was cited in as a party defendant and filed an answer to the plaintiff's complaint. On June 29, 1973, the Superior Court sustained the demurrer of the original defendants on the ground that § 16-344 created an exception to § 22a-18. The plaintiff has appealed to this court from the judgment rendered after the court sustained the defendants' demurrer.

The resolution of this appeal quite obviously depends upon an interpretation of the term "state regulation" as used in § 16-344. If the relief sought by a cause of action maintained by virtue of the Environmental Protection Act of 1971 constitutes such regulation, then clearly the special provisions of § 16-344 conflict with the general provisions of the Environmental Protection Act. In such a case, as was pointed out by the trial court, the rule of statutory construction delineated in *Baker* v. *Baningoso,* 134 Conn. 382, 385, 58 A.2d 5, would apply: " '[I]f one of two enactments is special and particular and clearly includes the matter in controversy, whilst the other is general and would if standing alone, include it also, and if the inclusion of that matter in the general enactment would produce a conflict between it and the special provisions, it must be taken that the latter were designed as an exception to the general provisions.' *Wentworth* v. *L. & L.*

*Dining Co.,* 116 Conn. 364, 369, 165 A. 203." In terms of the specific situation presented herein, the operation of the railroad power plant, by virtue of § 16-344, would be exempt from the relief sought by the plaintiff's cause of action as an exception to §§ 22a-16 and 22a-18.

We find this to be the case. " 'The words used [in a statute] are to be construed according to their commonly approved usage. General Statutes § 1-1; *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 474, 217 A.2d 698; *State* v. *Benson,* 153 Conn. 209, 214, 214 A.2d 903; *Baker* v. *Norwalk,* 152 Conn. 312, 315, 206 A.2d 428. Or, stated another way, statutory language is to be given its plain and ordinary meaning. *State* v. *Taylor,* 153 Conn. 72, 82, 214 A.2d 362.' *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886." *Windham Community Memorial Hospital* v. *Willimantic,* 166 Conn. 113, 120, 348 A.2d 651. Webster's Third New International Dictionary defines "regulation" as "an act of regulating or the condition of being regulated." "Regulate" is defined as meaning "to govern or direct according to rule; . . . *to bring under the control of law or constituted authority.*" (Emphasis added.). "Regulation connotes . . . the power to permit and control as well as to prohibit"; *Yale University* v. *New Haven,* 104 Conn. 610, 625, 134 A. 268; and "infers limitations." *Hartland* v. *Jensen's, Inc.,* 146 Conn. 697, 702, 155 A.2d 754.

The state public health code and the sanitary code of Greenwich are, by any reasonable application of the definitions given above, and by the express wording of the statutes authorizing their promulgation, exercises in "regulation." See General Statutes §§ 19-13, 19-80. The Environmental Protection Act

of 1971 clearly was a legislative attempt to bring the ever-growing problems of air and water pollution "under the control of law." That act, in its declaration of policy, specifically found and declared that there is a *"public* trust in the air, water and other natural resources of the state of Connecticut." (Emphasis added.) § 22a-15. Through the medium of actions authorized by § 22a-16 the legislature sought to apply "limitations" on the "unreasonable pollution, impairment, or destruction" of those natural resources, or, in other words, to regulate those enumerated evils.

It could be argued that because the Environmental Protection Act of 1971 did not place complete regulatory authority over various forms of pollution within a traditional regulatory agency, but instead conferred standing to sue on a wide variety of agencies, municipalities and other entities, including "any person," it cannot be said to establish "state regulation." We are of the opinion, however, that § 22a-16 is an example of a legislative enactment of what has been described as the expanding doctrine of "private attorney generals," who are empowered to institute proceedings to vindicate the public interest. See, e.g., *Associated Industries* v. *Ickes,* 134 F.2d 694, 704 (2d Cir.), dismissed as moot, 320 U.S. 707, 64 S. Ct. 74, 88 L. Ed. 414; 3 Davis, Administrative Law Treatise § 22.05. By utilizing this procedure, the legislature expanded the number of potential guardians of the public interest in the environment into the millions, instead of relying exclusively on the limited resources of a particular agency. That this is the case is demonstrated by the provisions of § 22a-20, which states, in part, as follows: "Sections 22a-14 to 22a-20, inclusive, shall be *supple-*

*mentary* to *existing* administrative and *regulatory* procedures provided by law and in any action maintained under said sections, the court may remand the parties to such procedures." (Emphasis added.) The mere fact that the Environmental Protection Act of 1971 allows towns or private citizens to initiate proceedings, for example, to enforce public health codes, does not prevent the act from constituting "state regulation."

The plaintiff urges upon this court a more restrictive view of the term "state regulation," and apparently relies heavily upon the ruling of the United States Supreme Court in *Huron Portland Cement Co.* v. *Detroit,* 362 U.S. 440, 80 S. Ct. 813, 4 L. Ed. 2d 852. While that case dealt with the constitutionality of a local smoke abatement code in light of the interstate commerce clause of the United States constitution and is thus inapposite to the case at hand, it is interesting to note that even the language of that case (p. 443) depicted the code as "local *regulation* to effectuate a legitimate local public interest." (Emphasis added.)

The plaintiff nonetheless maintains that the correct interpretation of § 16-344 is that interstate railroad service operated under compact is exempt only from control of the management of the roads or the fixing of rates which may be charged by the service. The obvious weakness in this argument is that no such limitation is expressed in § 16-344, whereas its predecessor statute, Public Acts 1967, No. 474, which was repealed with the passage of § 16-344 (Public Acts 1969, No. 46, § 3), did expressly state that the service operated pursuant to the contract was exempt from federal and state regulation of "rates and schedules of service." The obvious

legislative intent was to expand the exemption beyond the narrow confines of those specific areas of regulation.

The plaintiff finally argues that the definition of "regulation" found within the Uniform Administrative Procedure Act[3] (hereinafter UAPA) (General Statutes chapter 54) is the applicable one and that the major purpose of § 16-344 is the exemption of railroad service operated under compact from the procedural confines of the UAPA. This contention is without merit. The exemption established by § 16-344 was enacted and in effect before the passage of the UAPA, which went into effect on January 1, 1972. Moreover, mindful, as we must be, of the directive of § 1-1, we cannot impute to the legislature the quantum of linguistic imprecision necessary for it to mean "regulation" as defined in § 4-166 by its use of "state regulation" within the context of § 16-344, as the plaintiff would have us do.

The smoke which is claimed to cloud the skies over Greenwich does not in any way serve to obfuscate what appears to be the clear intent of the legislature specifically to exempt those responsible therefor from state regulation of the type sought by this action.

There is no error.

In this opinion HOUSE, C. J., SHAPIRO and LOISELLE, Js., concurred.

---

[3] General Statutes § 4-166 defines the term "regulation" as "each agency statement of general applicability that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior regulation, but does not include (1) statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public, or (2) declaratory rulings issued pursuant to section 4-176, or (3) intra-agency memoranda."

BOGDANSKI, J. (dissenting). The proper interpretation of General Statutes § 16-344 is not so clear to me as it appears to the majority. In my judgment § 16-344 exempts the defendants from state regulations which apply specifically to transportation but not from an action brought under the Environmental Protection Act of 1971 to enjoin air pollution. I do not believe that the General Assembly meant to exclude railroad passenger service from the environmental obligations which it imposed uniformly throughout the state.

This state entered into the Railroad Passenger Transportation Compact with New York "for the purpose of providing for the continuation and improvement of essential interstate railroad passenger service." General Statutes § 16-343. The compact authorizes the Connecticut Transportation Authority, in cooperation with the Metropolitan Transportation Authority of New York, to acquire, repair and dispose of railroad assets, to operate railroad passenger service or contract for the operation of that service by others, and to abandon portions of that service when advisable. General Statutes § 16-343. Neither the compact nor the State Transportation Act, General Statutes §§ 13b-1—13b-23, empowers the Connecticut Transportation Authority to assume responsibility for pollution control or environmental protection. Along with the compact the General Assembly enacted General Statutes § 16-344: "Mass transportation and railroad service operated pursuant to this compact or under contract with the Connecticut Transportation Authority shall be exempt from state regulation."

I agree that the action brought by the town of Greenwich to restrain air pollution under the

Environmental Protection Act of 1971 falls within the broad category of "state regulation." But the precise question is whether the control of air pollution from a railroad power plant operated under contract with the Connecticut Transportation Authority is "state regulation" of "mass transportation" or of "railroad service" so as to be prohibited by § 16-344. The regulation of railroad power plant emissions is a function entirely different from the regulation of railroad "transportation" or "service." Arguably, however, the language of § 16-344 must be construed broadly so as to bring pollution control measures within its scope because such measures may ultimately impinge on passenger service operation. The statute is not completely unambiguous. We must, therefore, seek to ascertain the legislative intent by looking to the policy and the legislative history of § 16-344, to other enactments which bear on its construction, and to relevant features of New York's enactment of the compact. *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66; *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 85, 285 A.2d 330; *State* v. *Cataudella,* 159 Conn. 544, 552, 271 A.2d 99.

The legislative history does not support a broad reading of the scope of the exemption contained in § 16-344. That section is not a part of the railroad passenger transportation compact itself. The General Assembly enacted § 16-344, together with the present compact, in 1969, simultaneously repealing the original compact of 1967. Public Acts 1969, No. 46. The 1967 compact, which differed from its successor primarily in wording, actually contained an exemption provision. That provision read: "Upon approval of this compact by the United States Congress, railroad passenger service operated pursu-

ant to this compact shall be exempt from federal and state regulation of rates and schedules of service." Public Acts 1967, No. 474, art. IV § 2.

Significantly, the House and Senate reports do not contain any explanation for the substitution of the general language of § 16-344 for the more specific language of the 1967 exemption provision. The only explanation to be found anywhere in the legislative history of Public Acts 1969, No. 46, for the repeal of the original compact was the necessity to conform the precise language of the Connecticut version with the language of the version which New York had just enacted in 1968. 13 S. Proc., pt. 2, 1969 Sess., p. 787; Hearings before the Joint Standing Committee on Transportation, 1969 Sess., pp. 7, 20. The new exemption provision was not added for that reason, however, because New York did not enact such a provision either in its version of the compact or apart from it. See N.Y. Transp. Law, App. 5, §§ 1-3. From all that appears, therefore, § 16-344 was merely a modification of the original exemption provision, designed to assure that state transportation regulations would not interfere with the management of railroad passenger service by the Connecticut Transportation Authority. The original exemption from state regulation of "rates and schedules of service" may have been considered too modest to secure that purpose in view of the manifold aspects of railroad operation. But there is no reason to believe that the General Assembly intended to exempt compact activities from otherwise applicable uniform police power enactments not specially related to transportation.[1]

---

[1] Elsewhere the General Assembly explicitly limited the availability of exemptions from air pollution regulations. General Statutes § 19-519 states: "Any person who owns or is in control of any

The broad interpretation of § 16-344 adopted by the majority is implausible as well as unsupported by the legislative history. To be consistent the majority would have to concede that § 16-344 exempts compact activities from a veritable host of statutes. For instance, the construction approved by the majority implies that statutes forbidding discrimination in employment do not apply to compact activities; nor do state fire safety and building codes; nor does the penal code. Those statutes and codes are also forms of "state regulation," as applicable to compact activities as the public health code and the Environmental Protection Act of 1971. I cannot believe that the General Assembly intended § 16-344 to have such bizarre results. "When a statute is ambiguous in terms and fairly susceptible to two constructions, one of which will avoid an absurd or ridiculous consequence, a court is warranted in assuming that the legislative intent was to attain a rational and sensible result. *Sage-Allen Co.* v. *Wheeler*, 119 Conn. 667, 679, 179 A. 195; *United States* v. *Bryan*, 339 U.S. 323, 338, 70 S. Ct. 724, 94 L. Ed. 884." *Bridgeport* v. *Stratford*, 142 Conn. 634, 644, 116 A.2d 508.

My view of the proper interpretation of § 16-344 is also buttressed by a comparison with the New York enactment of the compact. New York expressly provided for the nonexemption of compact activities from state regulation: "Metropolitan

plant . . . may apply . . . for a permit granting an exemption . . . from regulations . . . governing the quality, nature, duration or extent of discharges of air pollutants. . . . The commissioner may grant such permit if he finds that the discharges . . . do not constitute a danger to public health or safety, and compliance with the regulations from which exemption is sought would produce practical difficulty or hardship without equal or greater benefits to the public."

transportation authority shall exercise all the powers and perform all the duties conferred or imposed upon it pursuant to any provision of the foregoing compact in conformity with and pursuant to the provisions of title eleven of article five of the public authorities law, as amended [establishing the authority],[2] and all other laws of the state of New York governing or regulating its creation, existence and activities." N.Y. Transp. Law, App. 5, § 2. The New York approach suggests that the goals of the compact can be achieved without construing § 16-344 to exempt compact activities from the requirements of the Environmental Protection Act and similar police power enactments which do not pertain specifically to transportation.

Finally, the interpretation which the majority places on § 16-344 conflicts with the obligations which Connecticut assumed in 1967 under the Mid-Atlantic States Air Pollution Control Compact, set out in General Statutes § 19-523. Both Connecticut and New York are signatories to that compact. The compact states that "the signatory parties recognize that the protection and improvement of the quality of their common atmosphere is vested with local, state and national interests, for which they have a joint responsibility." Accordingly, the compact

[2] Title eleven does contain some limited exemptions from regulation for activities of the Metropolitan Transportation Authority; for instance, "local laws, resolutions, ordinances, rules and regulations of a municipality or political subdivision . . . conflicting with this title or any rule or regulation of the authority, shall not be applicable to the activities or operations of the authority, or the facilities of the authority, except such facilities that are devoted to purposes other than transportation purposes. . . . The jurisdiction, supervision, powers and duties of the department of transportation of the state under the transportation law shall not extend to the authority in the exercise of any of its powers under this title." New York Public Authorities Law § 1266 (8).

creates an interstate agency, the mid-Atlantic states air pollution control commission, which is empowered to investigate the causes and sources of air pollution, to establish air quality and emissions control standards, and to issue orders to cease and desist from any emissions in violation of its rules. General Statutes § 19-523, art. 3 § 3.1, art. 4 §§ 4.1, 4.3, art. 5 § 5.2. The commission may enforce its orders by bringing an action in "any court of competent jurisdiction." General Statutes § 19-523, art. 4 § 4.3. The compact further provides that violations of any compact provision or commission regulation or order "shall be punishable as may be provided by statute of any of the signatory parties within which the offense is committed." General Statutes § 19-523, art. 4 § 4.5. Lastly, "[e]ach signatory party pledges faithful cooperation in the control of air pollution in the region and consistent with such object to enact (or if enacted, to keep in force and where necessary to amend) laws which will: (a) Enable it to secure and maintain standards of air quality at least equal to those prescribed by the commission; (b) accomplish effectively the objectives of this compact, and enable its officers, departments, boards and agents satisfactorily to accomplish the obligations and duties assumed by the party under the terms hereof." General Statutes § 19-523, art. 6 § 6.2.

I am unwilling to believe that the General Assembly intended to insulate activities under the railroad passenger transportation compact from air pollution controls in contravention of the contrary obligations incurred by Connecticut under the air pollution control compact. The legislature is presumed to intend that its enactments be read in light

of existing relevant statutes so as to make one consistent body of law. *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66. That presumption is especially strong when a statute may be interpreted to be inconsistent with obligations solemnly undertaken by the state as a party to an interstate compact. Nothing in the specific language of § 16-344 or in its legislative history requires an interpretation of that section which conflicts with the air pollution control compact.

In conclusion, I am persuaded that the exemption from state regulation contained in General Statutes § 16-344 should not be construed to prohibit the suit brought under the Environmental Protection Act of 1971 by the town of Greenwich in this case.

I would find error, set aside the judgment, and remand the case with direction to overrule the demurrer and proceed in accordance with law.