**Robert W. BLANCHETTE et al., Petitioners,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**No. 94, Docket 75–4117.**

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1977.

Decided March 21, 1977.

---

Kenneth H. Lundmark, Counsel, Metropolitan Region, Consolidated Rail Corp., New York City (Lloyd H. Baker, New York City, of counsel), for petitioners.

Robert A. Kerry, Washington, D. C. (Peter R. Taft, Asst. Atty. Gen., Raymond N. Zagone and Kathryn A. Oberly, Dept. of Justice, Washington, D. C., Janet E. LaBella and Jean W. Sutton, Environmental Protection Agency, Region I, Boston, Mass., of counsel), for respondent.

Before LUMBARD and FEINBERG, Circuit Judges, and COFFRIN, District Judge.*

PER CURIAM:

This proceeding, brought by petitioners, Trustees of the Penn Central Transportation Company, pursuant to the authority of 42 U.S.C. § 1857h–5(b)(1), challenges an implementation plan for national ambient air quality standards promulgated by respondent, the United States Environmental Protection Agency ("EPA"), in accordance with 42 U.S.C. § 1857c–5(a).[1] Petitioners would have us vacate the implementation plan because of certain alleged irregularities in the EPA's procedures leading to the promulgation of the plan. We deny the petition.

Pursuant to 42 U.S.C. § 1857c–5 each state is required to adopt and submit to the Administrator of the EPA an implementation plan providing for the attainment, maintenance and enforcement of ambient air quality standards promulgated by the Administrator. If a plan meets certain criteria, the Administrator is required to ap-

---

* Honorable Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

1. The statutory provisions involved in this review derive from the Clean Air Amendments of 1970, Pub.L. No. 91–604, 84 Stat. 1676, *amending* the Clean Air Act, 42 U.S.C. § 1857 *et seq.*

prove it, 42 U.S.C. § 1857c–5(a)(2); if such criteria are not met, the Administrator must promulgate regulations setting forth an appropriate implementation plan unless the state corrects whatever deficiencies may exist in its previously submitted plan, 42 U.S.C. § 1857c–5(c)(1).

Connecticut submitted its implementation plan in accordance with this procedure, and the plan was initially approved by the Administrator on May 31, 1972. 37 Fed.Reg. 10856 (1972). Subsequently, the Supreme Court of Connecticut ruled that under Connecticut statutory law facilities under contract with, or owned or operated by the Connecticut Transportation Authority were exempt from the Connecticut implementation plan. *Town of Greenwich v. Connecticut Transportation Authority,* 166 Conn. 337, 348 A.2d 596 (1974). That decision directly affected the Cos Cob power plant, which is owned by Penn Central and leased to the Connecticut Department of Transportation, the parent agency of the Connecticut Transportation Authority.[2] As a result of the *Greenwich* decision the Connecticut plan failed in part to meet the necessary criterion that the State have the legal authority to carry out the plan. 42 U.S.C. § 1857c–5(a)(2)(F)(i). The gap thus created in Connecticut's implementation plan was filled by the EPA's adoption of the Connecticut plan as federal regulations, 40 C.F.R. §§ 52.377(b), –.380 (1976), effective June 30, 1975, 40 Fed.Reg. 23279–80 (1975).

The Cos Cob power plant is located in Greenwich, Connecticut, and generates electric power at 25 cycles per second. It supplies the power to operate the New Haven Line, a commuter rail service between New Haven and New York City. It is conceded that the Cos Cob facility is a source of substantial air pollution in the Greenwich area, and that it does not now comply with the Connecticut implementation plan.

Petitioners urge that the implementation plan promulgated by the Administrator should be invalidated because the EPA failed to prepare an Inflation Impact Statement as required by Executive Order 11821, because the EPA based its action "partially on inaccurate and erroneous premises", and because the EPA failed to consider "other environmental factors." The EPA opposes each of these arguments and, further, would have us deny the petition because petitioners did not raise their arguments within thirty days of the initial promulgation of the Connecticut implementation plan on May 31, 1972. *See* 42 U.S.C. § 1857h–5(b)(1); *Friends of the Earth v. Carey,* 552 F.2d 25 (2d Cir. 1977). We need not consider the issue of timeliness because of our decision on the other issues. We now proceed to a discussion of the merits.

Executive Order 11821 provides that "[m]ajor proposals . . . for the promulgation of regulations or rules by any executive branch agency must be accompanied by a statement which certifies that the inflationary impact of the proposal has been evaluated." The Director of the Office of Management and Budget ("OMB") is designated "to develop criteria for the identification of major . . . regulations, and rules." Pursuant to this authority, OMB Circular No. A–107 directed agency heads to establish criteria for determining what proposed regulations are "major." On February 24, 1975, the EPA issued interim criteria which defined major actions as those "that are likely to result in capital investment exceeding $100 million or annualized costs (including capital charges) of $50 million." The EPA's final criteria, approved by OMB on November 12, 1975, establish a more restrictive standard for annualized costs but do not establish a minimum figure for capital investment.

The interim criteria, which were in effect for approximately three months prior to the promulgation of the challenged regulations on May 22, 1975, provide the definition of "major" for purposes of this action. The

---

**2.** The parties, for the purpose of this review, employ the names of the Connecticut Department of Transportation and the Connecticut Transportation Authority interchangeably. We shall, likewise, not make any distinction between them.

final criteria, of course, do not apply to this case because they were not in effect until after the adoption of the regulations in question. Nonetheless, the OMB's later approval of the not dissimilar final criteria demonstrates, at least, the reasonableness of the interim criteria.

Assuming, *arguendo,* that there exists a private right of action for petitioners to enforce Executive Order 11821,[3] petitioners have not shown that the regulations in question qualify as "major." Accepting petitioners' allegation, which is controverted by the respondent, that the capital cost of complying with the regulations would be $68 million,[4] the regulations do not qualify under the applicable interim criteria as "major." We cannot accept petitioners' attempt to enhance the dollar costs of complying with the regulations by hypothesizing the potential costs, both economic and ecologic, that would accrue if the New Haven Line were forced to cease operation. In light of the record before us such a possibility appears remote. Indeed, the EPA specifically denies such intention. We conclude that petitioners have not met the threshold criterion of establishing that the regulations in issue are "major,"[5] and that, therefore, Executive Order 11821 is inapplicable to such regulations by its own terms.

■ Petitioners' other arguments require but brief comment. The contention that the EPA based its promulgation of the regulations "partially on inaccurate and erroneous premises" stems from the following statement in the Administrator's transmittal letter: "No person appearing at the hearing, or submitting testimony subsequently opposed the disapproval of the State implementation plan or the substitution of the proposed regulation by the Administrator." We find that, when read in the context of the complete transmittal letter and the record as a whole, the statement provides no basis for complaint. It is clear that the concerns voiced by the representatives of Penn Central and the Connecticut Department of Transportation at the public hearing and in subsequent testimony, whether or not deemed to be "opposition", were understood and were given due consideration by the regulatory agency.

■ Petitioners' allegation that the EPA failed to consider "other environmental factors," likewise, is insubstantial. While petitioners do not indicate specifically the environmental factors that the EPA should have considered, it is clear that their argument focuses on the presumed environmental hazards consequent to the New Haven Line's becoming defunct. As we noted previously, the potential consequences of the closing of the New Haven Line are not factors appropriate for our consideration at this time.[6]

The petition for review is denied.

---

3. *But see National Renderers Ass'n v. EPA,* 541 F.2d 1281 (8th Cir. 1976); *Independent Meat Packers Ass'n v. Butz,* 526 F.2d 228 (8th Cir. 1975), cert. denied, 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1976); *Acevedo v. Nassau County,* 500 F.2d 1078 (2d Cir. 1974).

4. The $68 million figure represents the cost of converting the electric power supply for the New Haven Line from Cos Cob generated power to commercially available power.

5. The cases cited by petitioners, in an effort to demonstrate that federal projects involving lower capital expenditures have been considered "major federal actions," *e. g., Steubing v. Brinegar,* 511 F.2d 489 (2d Cir. 1975); *Monroe County Conservation Council, Inc. v. Volpe,* 472 F.2d 693 (2d Cir. 1972), are unavailing.

Those cases, which all involve the definition of "major federal action" in relation to the requirement of filing an environmental impact statement, are not in point here, where the term "major" has been defined specifically for the purposes of Executive Order 11821.

6. An enforcement proceeding concerning the application of the regulations challenged here to the Cos Cob facility is presently pending in the District of Connecticut. *United States v. Department of Transportation,* Civil No. B–76–282 (D.Conn., filed Sept. 21, 1976). The District Court for Connecticut is the more appropriate forum for consideration of the issues relating to the possible closing of the Cos Cob facility and the New Haven Line.