ANIMAL RIGHTS FRONT, INC. *v.* REJEAN
JACQUES ET AL.
(AC 25006)

Flynn, DiPentima and McLachlan, Js.

Argued January 14—officially released April 5, 2005

*Derek V. Oatis*, for the appellant (plaintiff).

*Lewis K. Wise*, for the appellee (named defendant).

*David F. Sherwood*, for the appellee (intervening defendant Zella Ferrando).

*Roger Reynolds*, senior staff attorney, and *Lauren Cozzolino* and *Amanda Czepiel*, certified legal interns, filed a brief for the Connecticut Fund for the Environment, Inc., as amicus curiae.

*Opinion*

FLYNN, J. In this action for a permanent injunction, the plaintiff, Animal Rights Front, Inc., a nonprofit organization "dedicated to education and animal protection," appeals from the trial court's judgment rendered after the granting of the defendants' motions to strike the complaint for failure to state a claim upon which relief can be granted. The defendants are Rejean Jacques, doing business as Rejean Realty, Inc. (Rejean),

a developer; Edward Pietrycha, the building inspector of the town of Glastonbury; and Zella Ferrando, the mortgagee and former owner of the property. Specifically, the plaintiff claims that the court improperly held that General Statutes § 26-311[1] of the Connecticut Endangered Species Act, General Statutes § 26-303 et seq., governs and prevents analysis under General Statutes § 22a-16[2] of the Connecticut Environmental Protection Act (CEPA), General Statutes § 22a-14 et seq.

The following allegations and procedural history, as reflected in the record, are relevant to this appeal. In its complaint, the plaintiff claims that Rejean applied

---

[1] General Statutes § 26-311 provides in relevant part: "(a) Except as otherwise provided in section 26-310, it is unlawful for (1) any person to wilfully take any endangered or threatened species on or from public property, waters of the state or property of another without the written permission of the owner on whose property the species occurs; (2) any person, including the owner of the land on which an endangered or threatened species occurs, to wilfully take an endangered or threatened species for the purpose of selling, offering for sale, transporting for commercial gain or exporting such specimen; (3) any state agency to destroy or adversely modify essential habitat designated pursuant to section 26-306, so as to reduce the viability of the habitat to support endangered or threatened species or so as to kill, injure, or appreciably reduce the likelihood of survival of the species.

"(b) Nothing in sections 26-303 to 26-312, inclusive, or any regulation adopted pursuant to said sections shall prohibit a person from performing any legal activities on his own land that may result in the incidental taking of endangered or threatened animal and plant species or species of special concern. . . ."

[2] General Statutes § 22a-16 provides in relevant part: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

for and received approval to construct a thirty-nine unit subdivision on a parcel identified as Parcel S7 Ash Swamp Road (subdivision), located in Glastonbury, and Pietrycha issued certificates of occupancy for the subdivision. Rejean subsequently commenced construction of the subdivision and, as a result, altered the existing land by cutting and clearing trees and vegetation. In June, 2003, the plaintiff filed a complaint seeking a temporary and permanent injunction restraining Rejean from constructing more than sixteen units on the subdivision, and restraining Pietrycha from issuing building permits or certificates of occupancy for the subdivision. The property is part of one of the last remaining habitats of the eastern timber rattlesnake, an endangered species under General Statutes § 26-306 and § 26-306-4 of the Regulations of Connecticut State Agencies. The plaintiff maintains that construction of the subdivision will destroy the habitat of the rattlesnake through depleting its food source and vegetation used as cover.

Each of the defendants separately filed motions to strike the plaintiff's complaint for failure to state a claim on which relief can be granted. The court, in its December 5, 2003 decision, granted the defendants' motions to strike and thereafter rendered judgment in favor of the defendants. This appeal followed.

The plaintiff claims that CEPA governs and prevents the defendants from developing the subdivision because such development is likely to unreasonably impair or destroy the rattlesnakes inhabiting that parcel. The plaintiff maintains that the Connecticut Endangered Species Act does not govern or exempt analysis under CEPA. We disagree.

"A motion to strike challenges the legal sufficiency of a pleading and requires no factual findings by the trial court; as a result, our review of the court's ruling

is plenary." *Parker* v. *Ginsburg Development CT, LLC*, 85 Conn. App. 777, 779–80, 859 A.2d 46 (2004).

CEPA permits certain parties to bring an action against "any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ." General Statutes § 22a-16.

In determining what the term "unreasonable" means for purposes of CEPA, our Supreme Court concluded that "when . . . the legislature has enacted an environmental legislative and regulatory scheme specifically designed to govern the particular conduct that is the target of the action, that scheme gives substantive content to the meaning of the word 'unreasonable' as used in the context of an independent action under CEPA. Put another way, when there is an environmental legislative and regulatory scheme in place that specifically governs the conduct that the plaintiff claims constitutes an unreasonable impairment under CEPA, whether the conduct is unreasonable under CEPA will depend on whether it complies with that scheme. . . .

"[T]his conclusion [is based on] the overriding principle that statutes should be construed, where possible, so as to create a rational, coherent and consistent body of law. . . . It would be inconsistent with that principle to conclude, absent some clear indication to the contrary, that the legislature intended that the same conduct that complies with an environmental legislative and regulatory scheme specifically designed to govern it, nonetheless could be deemed by a court to be an

unreasonable impairment of the environment." (Citations omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 557–58, 800 A.2d 1102 (2002).

When determining the meaning of "unreasonable" for purposes of CEPA, we look to legislation specifically designed to govern the particular conduct complained about. Id. The regulatory scheme of the Connecticut Endangered Species Act specifically concerns endangered species. This specific legislation takes precedence over CEPA, a more general enactment, as well as a previous enactment. *Greenwich* v. *Connecticut Transportation Authority*, 166 Conn. 337, 341, 348 A.2d 596 (1974) (specific legislation takes precedence over more general legislation as matter of statutory construction); *Wisniowski* v. *Planning Commission*, 37 Conn. App. 303, 314, 655 A.2d 1146 (latest expression of legislature prevails over conflicting prior enactment), cert. denied, 233 Conn. 909, 658 A.2d 981 (1995).

In its complaint, the plaintiff alleges that the "[c]onstruction of the Subdivision by [Rejean] and issuance of certificates of occupancy by the Defendant Pietrycha will, unless restrained, constitute conduct which is reasonably likely to unreasonably impair or destroy the public trust in a natural resource of the state, to wit, the Rattlesnake, in violation of [General Statutes §] 22a-16 in one or more of the following ways

"a. Increased use of Property by both people and machinery involved in construction will increase the likelihood that individual Rattlesnakes . . . will be intentionally or inadvertently destroyed.

"b. Cutting and/or clearing of sections of Property will reduce the natural cover of the Rattlesnake and increase the likelihood of predation upon this species.

"c. Cutting and/or clearing of sections of Property will tend to reduce the present populations of mice and other rodents relied upon by the Rattlesnake as a food source.

"d. Development and use of the Property will disburse the current Rattlesnake population and increase vehicular traffic, thus increasing the likelihood that Rattlesnakes will be destroyed . . . ."

The complaint alleges that the defendants are proposing actions not deemed unlawful, specifically, the development of a subdivision. The kind of harm the plaintiff describes in its complaint is not intended, but rather is incidental to the lawful development of the property. The legislature, under the Connecticut Endangered Species Act, excluded that type of harm from the ambit of the act.

The Connecticut Endangered Species Act governs in this case, and thereby defines what is "unreasonable" under CEPA. The Connecticut Endangered Species Act permits the development of the subdivision that the plaintiff seeks to enjoin. Section 26-311 (b) of the Connecticut Endangered Species Act provides: "Nothing in [this act] or any regulation adopted pursuant to [this act] shall prohibit a person from performing any legal activities on his own land that may result in the incidental taking of endangered or threatened animal and plant species or species of special concern." Because this act governs and the plaintiff has pleaded facts constituting at most only an "incidental taking," the court's granting of the motions to strike was proper.

The judgment is affirmed.

In this opinion the other judges concurred.